```
_____ FILED      _____ ENTERED
_____ LODGED    _____ RECEIVED

JUL 08 2025   MH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM NO. 25-1431-016 | Case No. 2:25-mc-00041-JHC <br><br> MOTION TO SET ASIDE OR MODIFY SUBPOENA <br><br> ORAL ARGUMENT AND EVIDENTIARY HEARING REQUESTED <br><br> NOTICE ON MOTION CALENDAR: July 30, 2025 <br><br> FILED UNDER SEAL |

MOT. SET ASIDE OR MODIFY
CASE NO. _____

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

VENUE .................................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    Seattle Children's Hospital ................................................................................2

    B.    The Administration's Pronouncements on Transgender Care ......................3

    C.    The Subpoena ...................................................................................................4

LEGAL STANDARD .........................................................................................................6

ARGUMENT .......................................................................................................................7

I.    DOJ ISSUED THE SUBPOENA FOR AN IMPROPER PURPOSE. ....................7

II.    THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND IMPOSES UNDUE BURDENS ON THE HOSPITAL AND ITS DOCTORS, STAFF, PATIENTS, AND FAMILIES. .................................................................................9

III.    DOJ MUST ESTABLISH COMPLIANCE WITH 18 U.S.C. § 3486. ..................12

IV.    IF NECESSARY, THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING. ..............................................................................................................12

CONCLUSION .................................................................................................................13

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

i

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

## TABLE OF AUTHORITIES

**CASES**

*Carpenter v. United States*,
   585 U.S. 296 (2018)..................................................................................................10

*Clarke v. United States*,
   573 U.S. 248 (2014)..............................................................................................7, 12

*Dent v. West Virginia*,
   129 U.S. 114 (1889)....................................................................................................8

*Doe v. United States*,
   253 F.3d 256 (6th Cir. 2011).....................................................................................9

*Gonzales v. Oregon*,
   546 U.S. 243 (2006)....................................................................................................8

*June Med. Servs., L.L.C. v. Russo*,
   591 U.S. 299 (2020)..................................................................................................10

*Linder v. United States*,
   268 U.S. 5 (1925).........................................................................................................8

*Nw. Mem'l Hosp. v. Ashcroft*,
   362 F.3d 923 (7th Cir. 2004)..................................................................................11

*Peters v. United States*,
   853 F.2d 692 (9th Cir. 1988)..............................................................................6, 9

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
   648 F.2d 118 (3d Cir. 1981).....................................................................................6

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004)..........................................................................10, 11

*United States v. Bisceglia*,
   420 U.S. 141 (1975)....................................................................................................1

*United States v. Church of Scientology of Cal.*,
   520 F.2d 818 (9th Cir. 1975)....................................................................................7

*United States v. Gertner*,
   65 F.3d 963 (1st Cir. 1995)..................................................................................6, 8

*United States v. Goldman*,
   637 F.2d 664 (9th Cir. 1980)..............................................................................6, 9

MOT. SET ASIDE OR MODIFY
CASE NO. _____

ii

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

<sup></sup>

*United States v. Morton Salt Co.*,
   338 U.S. 632 (1950).................................................................................................6

*United States v. Powell*,
   379 U.S. 48 (1964)................................................................................1, 6, 7, 12

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025)..............................................................................................8

*United States v. Westinghouse Elec. Corp.*,
   638 F.2d 570 (3d Cir. 1980)...................................................................................10

*Washington v. Trump*,
   768 F. Supp. 3d 1239 (W.D. Wash. 2025).................................................................3

**FEDERAL STATUTES**

18 U.S.C.
   § 24(a).........................................................................................................................6
   § 3486 ...............................................................................................................6, 7, 12
   § 3486(a)(1)(A)(i)(I)..............................................................................................6, 12
   § 3486(a)(5) .............................................................................................................1, 6
   § 3486(c).....................................................................................................................6
   § 3486(e)(1) ..............................................................................................................11

**STATE STATUTES**

Wash. Rev. Code
   § 7.115.020(1)............................................................................................................8
   § 7.115.010(3)............................................................................................................8
   § 18.130.450 ..........................................................................................................2, 8
   § 41.05.017 ................................................................................................................2
   § 48.43.0128 ..............................................................................................................2
   § 74.09.675 ............................................................................................................2, 8
   Ch. 7.115....................................................................................................................2

**OTHER AUTHORITIES**

Executive Order No. 14168, "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (Jan. 20, 2025) ...................3

Executive Order No. 14183, "Prioritizing Military Excellence and Readiness" (Jan. 27, 2025)..............................................................................................................................3

Executive Order No. 14187, "Protecting Children From Chemical and Surgical Mutilation" (Jan. 28, 2025)..............................................................................3, 5, 7

MOT. SET ASIDE OR MODIFY
CASE NO. _____

iii

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

## INTRODUCTION

Recognized among the preeminent children's hospitals in the nation, Seattle Children's Hospital has been delivering care to families in the Pacific Northwest for more than 100 years. It regrettably finds itself in the crosshairs of an Executive Order on the politically divisive subject of transgender care. Rather than addressing this issue through medical debate, the Administration has prompted the U.S. Department of Justice ("DOJ") to serve the Hospital with an investigative subpoena that is staggering in scope. The subpoena seeks patient and family identities and medical records for every minor who has received certain treatments during the past five years. It also demands personnel files for every doctor, nurse, and other provider who has treated such patients and other related personnel. DOJ has informed Seattle Children's that it has no information or allegations that the Hospital breached any federal law. Rather, the subpoena was issued as a byproduct of the Executive Order.

Pursuant to 18 U.S.C. § 3486(a)(5), the Hospital respectfully moves to set aside the subpoena. If enforced, the subpoena would effect a massive invasion on the privacy of minor patients, patients' families, doctors, and staff. And it would do so for no legitimate investigative purpose. The purpose of DOJ's dragnet operation is obvious: to pressure patients and hospitals, including Seattle Children's, into stopping treatments that doctors, patients, and families have decided are in patients' best interests and are protected by Washington state law.

This type of administrative subpoena is not self-enforcing; only a court can enforce it. By "placing the federal courts between the Government and the person summoned," Congress "provided protection from arbitrary or capricious action." *United States v. Bisceglia*, 420 U.S. 141, 151 (1975). The Court should "not permit its process to be abused," *United States v. Powell*, 379 U.S. 48, 58 (1964), by authorizing a fishing expedition through these sensitive documents. Seattle Children's urges the Court to set aside the subpoena.

## VENUE

Venue is proper in the Western District of Washington, Seattle Division, under 18 U.S.C. § 3486(a)(5), because Seattle Children's does business and resides within the District and Division.

bar

MOT. SET ASIDE OR MODIFY
CASE NO. _____

1

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

Declaration of Jeffrey G. Ojemann, MD ¶ 6.

# BACKGROUND

### A. Seattle Children's Hospital

Seattle Children's is the largest provider of pediatric services in the Pacific Northwest, serving children from Washington, Wyoming, Alaska, Montana, Idaho, and beyond. *Id.* ¶ 8. In its most recent fiscal year, the Hospital provided over 525,000 patient visits. *Id.* ¶ 11. The Hospital aims to provide hope, care, and cures to help every child. *Id.* ¶ 10. In the Hospital's Gender Clinic, mental health providers, endocrinologists, and adolescent medicine providers, among other specialists, work together with patients and their families to support the physical, mental, and social health of adolescent patients navigating issues related to gender development and dysphoria. *Id.* ¶ 19. This care (often called "gender-affirming care") is protected by Washington law.[1] Since 2020, Seattle Children's has treated approximately 3,100 minor patients in its Gender Clinic and/or a surgical program that has provided limited services to minors. *Id.* ¶ 23.

Central to the Hospital's mission is its commitment to keeping its patients' health and personal information private and confidential. *Id.* ¶ 30. All patients and their families must be able to trust the Hospital to protect information shared in confidence because that trust is what enables them to feel comfortable disclosing information necessary for the Hospital to provide care. *Id.* ¶¶ 31-32.

Seattle Children's patients who have sought gender-affirming care are particularly concerned about protecting their private medical information. Given the rhetoric emanating from many corners of society and directly from the Administration (described below), patients' families have expressed concern "about the federal government trying to obtain their child's medical records in an effort to identify adolescents who have accessed this care." Ex. 18.[2] Meanwhile, providers of gender-affirming care have reported experiencing threats of violence and harassment.

---

[1] Wash. Rev. Code §§ 18.130.450, 41.05.017, 48.43.0128, 74.09.675, & Ch. 7.115.

[2] All Exhibits are attached to the Declaration of Christopher N. Manning, filed herewith.

MOT. SET ASIDE OR MODIFY
CASE NO. _____

2

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

*Id.*; *see* Ojemann Decl. ¶ 45.

### B. The Administration's Pronouncements on Transgender Care

Since January, the Administration has embarked on a series of actions designed to end gender-affirming care. The Administration expressly has stated this goal. The subpoena was prompted by Executive Order 14187, titled "Protecting Children from Chemical and Surgical Mutilation" ("Order").³ Ex. 2. The Order labeled gender-affirming care as "maiming and sterilizing" and asserted that "[t]his dangerous trend must end." *Id.* § 1. The Order declared that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another," and, in Section 4, instructed agencies "to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Id.* §§ 1, 4. The Order directed DOJ to "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act." *Id.* § 8(c).

One week later, a White House press release stated this about the Order:

> *It's already having its intended effect*—preventing children from being maimed and sterilized by adults perpetuating a radical, false claim that they can somehow change a child's sex. Hospitals around the country are taking action to downsize or eliminate their so-called 'gender-affirming care' programs.

Ex. 7 (emphasis added). This court preliminarily enjoined Section 4 of the Order, and Sections 3(e) and 3(g) of Executive Order 14168, as likely violating the separation of powers and the Equal Protection Clause. *Washington v. Trump*, 768 F. Supp. 3d 1239 (W.D. Wash. 2025).

DOJ nevertheless promptly implemented other sections of the President's Order. On April 22, 2025, U.S. Attorney General ("AG") Bondi issued a memorandum (the "Bondi Memo") describing gender-affirming care as "the barbaric practice of surgically and chemically maiming

---

³ The Order is one of several aimed at transgender individuals. *See, e.g.*, Ex. 3, Exec. Order No. 14168, "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (Jan. 20, 2025); Ex. 4, Exec. Order No. 14183, "Prioritizing Military Excellence and Readiness" (Jan. 27, 2025).

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

3

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

and sterilizing children." Ex. 5 at 1. The Bondi Memo stated that DOJ "will bring these practices [*i.e.*, gender-affirming care] to an end." *Id.* at 6. The Memo directed "the Civil Division's Fraud Section to pursue investigations under the False Claims Act of false claims submitted to federal health care programs." *Id.* at 4. As part of this direction, the Memo identified "gender dysphoria" as "an illegitimate reason" for "prescribing puberty blockers to a child." *Id.* The Memo also instructed DOJ to "partner with state attorneys general" and to "support the state-level prosecution of medical professionals who violate state laws that protect children." *Id.* at 5.

Assistant Attorney General ("AAG") Shumate, head of DOJ's Civil Division, responded to this call to action on June 11, 2025, instructing "Civil Division attorneys to prioritize investigations and enforcement actions advancing" the priorities discussed above and to "use all available resources to prioritize investigation of doctors [and] hospitals." Ex. 6 at 1-2.

The President has left no ambiguity about the Administration's objectives:

- On January 28, 2025, the President posted on Truth Social: "Today, it was my great honor to sign an Executive Order banning the chemical castration and medical mutilation of innocent children in the United States of America…. My Order directs Agencies to use every available means to cut off Federal financial participation in institutions which seek to provide these barbaric medical procedures, that should have never been allowed to take place!" Ex. 8.

- On March 4, 2025, the President stated to Congress: "And now I want Congress to pass a bill permanently banning and criminalizing sex changes on children and forever ending the lie that any child is trapped in the wrong body. This is a big lie." Ex. 9 at H971.

C. **The Subpoena**

On June 11, 2025 (the same day he issued his instructions), AAG Shumate issued the subpoena to Seattle Children's. Ex. 1. The subpoena requests production of responsive documents within 30 days, by July 9, 2025.

The Hospital has never received a subpoena like this one. It is breathtaking in scope. Its

15 requests, which cover 2020 to present, seek four categories of documents:

1. *Personnel files*: Personnel files for all Hospital executives, management employees, or board members; employees with authority to prescribe medications or perform medical evaluations; and employees engaged in billing activities (Request 1).

2. *Patient information and medical records*: Documents sufficient to identify every patient prescribed puberty blockers or hormone therapy (by name, date of birth, SSN number, address, and parent/guardian information); for each such patient, all documents related to clinical indications, diagnoses, or assessments that formed the basis for the prescription; all documents relating to informed consent, intake, and parent/guardian authorization; and all documents related to adverse events, side effects, or medically unfavorable consequences (Requests 11-13, 15).

3. *Billing information*: All documents related to billing, insurance claims, and diagnosis codes related to gender-related care, and all other diagnosis codes for minors other than those specifically identifying transsexualism, gender dysphoria, gender incongruence, or gender identity disorder (Requests 2-6).

4. *Information regarding pharmaceutical companies and government agencies*: Communications with and documents received from or related to pharmaceutical companies providing puberty blockers or hormones for gender-related care; communications with government agencies related to the safety of puberty blockers or hormones for minor patients (Requests 7-10, 14).

Ex. 1.

On July 1, 2025, Seattle Children's counsel met with attorneys from DOJ's Civil Division and Consumer Protection Branch regarding the subpoena. Manning Decl. ¶ 3. As relevant here, the DOJ attorneys stated that (1) DOJ issued the subpoena because EO 14187 and the Bondi Memo directed it to do so; (2) DOJ is unaware of information or allegations that Seattle Children's violated the statutes cited in the subpoena; and (3) Seattle Children's was selected as a subpoena recipient because DOJ knows that it provides gender-affirming care to minor patients. *Id.* ¶ 4. The DOJ attorneys noted that DOJ has also served subpoenas on other recipients as part of its investigation of possible violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), including off-label marketing of pharmaceuticals, billing fraud, and other general fraud theories. *Id.* ¶ 4(b). The DOJ has not determined if its investigation is civil or criminal. *Id.* ¶ 4(c).

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

5

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

## LEGAL STANDARD

18 U.S.C. § 3486 authorizes the Attorney General to issue administrative subpoenas in an investigation of "a Federal health care offense." 18 U.S.C. § 3486(a)(1)(A)(i)(I); *see id.* § 24(a) (defining "Federal health care offense"). Like all administrative subpoenas, those issued under Section 3486 are not self-enforcing. "[T]he subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See v. City of Seattle*, 387 U.S. 541, 545 (1967). Section 3486(a)(5) authorizes the recipient to move for an order setting aside or modifying the subpoena. If a recipient declines to respond to a subpoena, the government must move in court to enforce it for compliance to be required. 18 U.S.C. § 3486(c).

"[W]hen an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *City of Seattle*, 387 U.S. at 544. "The gist of the protection is in the requirement[,] expressed in terms, that the disclosure sought shall not be unreasonable." *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950) (citation omitted). "An administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) (quashing INS subpoena); *see also United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980) (affirming partial quashing of subpoena and stating that government must have "a realistic expectation rather than an idle hope that something may be discovered" (citation omitted)).

The subpoena must be issued for a "legitimate purpose." *Powell*, 379 U.S. at 57. Agencies must not abuse the subpoena process, and "a court may not permit its process to be abused." *Id.* at 58. Thus, for example, the government may not issue a subpoena "to harass the [recipient] or to put pressure on him to settle a collateral dispute." *Id.*; *see also, e.g., United States v. Gertner*, 65 F.3d 963, 968-69 (1st Cir. 1995) (affirming denial of enforcement where subpoena was "pretext" to investigate law firm's client); *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 130 (3d Cir. 1981) (en banc) (permitting discovery regarding whether subpoena issued "without an objective determination by the Commission and only because of political pressure"). The

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

6

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

government bears the initial burden to demonstrate by affidavit that it is conducting an investigation for a legitimate purpose and the requested information is relevant to that purpose. *Powell*, 379 U.S. at 57-58. The burden then shifts to the recipient to show the government's purpose in issuing the subpoena is improper. *Id.* at 58; *see United States v. Church of Scientology of Cal.*, 520 F.2d 818, 824-25 (9th Cir. 1975).

When the recipient presents facts "that give rise to a plausible inference of improper motive," a court must quash the subpoena or at least conduct an evidentiary hearing at which the recipient can cross-examine a government agent. *Clarke v. United States*, 573 U.S. 248, 254 (2014). "[C]ircumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available." *Id.* If, following that hearing, "there remains a substantial question in the court's mind regarding the validity of the government's purpose, it may then grant discovery." *Church of Scientology*, 520 F.2d at 824-25.

## ARGUMENT

### I. DOJ ISSUED THE SUBPOENA FOR AN IMPROPER PURPOSE.

The evidence of the government's improper purpose is manifest. The subpoena was triggered by the Executive Order, which seeks to "end" gender-affirming care. Ex. 2; Ex. 5. This court preliminarily enjoined the Administration's first attempt to end such care. *Supra* p.3. After the Bondi Memo declared that DOJ would end gender-affirming care, AAG Shumate instructed DOJ to prioritize investigating doctors and hospitals, Ex. 6 at 2, and issued the subpoena, Ex. 1. DOJ attorneys confirmed that EO 14187 and the Bondi Memo are the reason for the subpoena. Manning Decl. ¶ 4(a). The government is improperly leveraging its investigatory powers to achieve a political and discriminatory end.

The subpoena is improper for at least three reasons:

*First*, neither Section 3486, nor any other statute, authorizes DOJ to issue subpoenas for political ends. Using the subpoena process in this way falls squarely within the proscribed purpose of applying "pressure … to settle a collateral dispute." *Powell*, 379 U.S. at 58. The government has articulated no "reason to suspect" Seattle Children's of violating federal law—because it has

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

7

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

none. *Gertner*, 65 F.3d at 970; *see* Manning Decl. ¶ 4(e). That leaves the conclusion that the subpoena is a pretext for some other—improper—purpose. Abundant evidence, discussed above, shows that this improper purpose is the Administration's stated objective of proscribing medical care that doctors, patients, and their families have decided is necessary and appropriate.

*Second*, the Administration's attempt to regulate medical care through pretextual investigations usurps states' authority over the practice of medicine. The "direct control of medical practice in the states is beyond the power of the federal government." *Linder v. United States*, 268 U.S. 5, 18 (1925); *see also Dent v. West Virginia*, 129 U.S. 114, 121-22 (1889). The federal government's attempt to arrogate for itself authority to define the appropriateness of medical treatments—including the AG's direction that "gender dysphoria" is "an illegitimate reason" for certain treatments, Ex. 5 at 4—flouts "the background principles of our federal system" that generally leaves to the states the power to regulate medical care, *see Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).

The Hospital acknowledges that states (and individuals) have different views regarding the appropriateness of gender-affirming care. But that is part and parcel of our federal system of government. As the Supreme Court recently held, states have "wide discretion to pass legislation" concerning medical care, regardless of whether "there is medical and scientific uncertainty." *United States v. Skrmetti*, 145 S. Ct. 1816, 1836 (2025) (citation omitted).

The State of Washington has elected to permit such care: it "is the public policy of Washington to protect the provision of protected health care services," Wash. Rev. Code § 7.115.020(1), including "gender-affirming treatment," *id.* § 7.115.010(3); *see also id.* § 74.09.675. Washington also protects doctors who provide that care. *Id.* § 18.130.450. The federal government should not be permitted to use its administrative subpoena authority to pressure the Hospital—a Washington-based organization—to stop the provision of care that Washington has expressly authorized and the American Academy of Pediatrics ("AAP") has recognized as the standard of care. Ex. 10 (2018 AAP policy statement); Ex. 11 (reaffirming in 2023). That is an improper purpose.

MOT. SET ASIDE OR MODIFY  
CASE NO. _____

8

CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

*Third*, the subpoena's breadth confirms its improper purpose. *See also infra.* The DOJ does not typically investigate healthcare fraud by issuing suspicionless, blanket subpoenas seeking the private medical records and identities of thousands of minor patients, the personnel files for every doctor, nurse, and other provider who has treated them, and the personnel files of other hospital staff and executives. The exorbitant breadth of these requests is plainly intended to place pressure on the Hospital, medical professionals, and patients and families so as to "end" gender-affirming care.

## II. THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND IMPOSES UNDUE BURDENS ON THE HOSPITAL AND ITS DOCTORS, STAFF, PATIENTS, AND FAMILIES.

Independent of its improper purpose, the subpoena also seeks irrelevant information and is overbroad and unduly burdensome. A court must weigh the burden imposed by an administrative subpoena against the relevance of the material requested. *Doe v. United States*, 253 F.3d 256, 268 (6th Cir. 2011). Applying this balancing test, the subpoena should be set aside, or at least modified to exclude patient information and personnel records. *See, e.g., Peters*, 853 F.2d at 699-700 (affirming decision quashing overbroad administrative subpoena).

***Patient information and medical records.*** The subpoena represents a DOJ fishing expedition through the sensitive medical records of approximately 3,100 minor patients. Ex. 1, Requests 2-5, 11-13, 15; Ojemann Decl. ¶ 23. The requested documents cover every aspect of patient care: the identities, SSN numbers, and addresses of minor patients and their families; clinical indications, diagnoses, and assessments, which would include especially sensitive mental-health information; patient communications; and billing-related information. Compliance would effect a massive invasion of privacy. Exs. 19-22. It would also impose immense financial costs and logistical challenges on the Hospital, Ojemann Decl. ¶¶ 34-40, a non-profit organization that should be devoting time and resources to treating patients and conducting groundbreaking research—not scouring servers, computers, and other records because of DOJ's "idle hope that something may be discovered." *Goldman*, 637 F.2d at 667 (citation omitted).

The requested documents provide "an intimate window" into the most private aspects of the lives of patients and their families. *Carpenter v. United States*, 585 U.S. 296, 310-11 (2018); *see* Ojemann Decl. ¶ 33. Courts recognize medical records as uniquely private. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551-54 (9th Cir. 2004) (recognizing right to privacy in medical records), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). "There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980).

When the government seeks to invade private medical records in this manner, it must show an interest that "outweighs the individual's privacy interest."[4] *See Eden*, 379 F.3d at 551. Relevant considerations include "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.*; *see also Westinghouse*, 638 F.2d at 578 (substantially similar factors for administrative subpoena).

All considerations weigh against the government here. *First*, as already discussed, the subpoena requests private medical information of uniquely vulnerable minor patients. *Second*, grave harms could result from non-consensual disclosure, as even the fact of disclosure to DOJ would pierce confidential doctor-patient relationships and chill these and other patients from seeking care. Ojemann Decl. ¶ 32. This chilling effect would extend beyond these patients: if a subpoena like this one were permitted, nothing could stop the government from conducting similar dragnets for other groups—say, autism patients or patients making sensitive reproductive health decisions.

In this context, the risk of subsequent use and disclosure poses heightened concerns. "[F]ierce emotions" and the "long-running controversy over the morality and legality" of gender-

---

[4] The Hospital may assert its patients' privacy rights to oppose enforcement of the subpoena. *See, e.g., June Med. Servs., L.L.C. v. Russo*, 591 U.S. 299, 318-19 (2020).

MOT. SET ASIDE OR MODIFY
CASE NO. _____

10

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

affirming care raise legitimate fears of violence and retribution directed at minor patients and their families and medical providers. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929, 933 (7th Cir. 2004) (Posner, J.) (affirming decision to quash subpoena for anonymized medical records of abortion patients); *see supra* pp.2-3.

*Third*, existing safeguards are insufficient to protect patients' privacy. Section 3486(e)(1) prohibits the government from using "health information about an individual" in a subsequent action or investigation against the individual "unless the action or investigation arises out of and is directly related to receipt of health care," but it does nothing to allay concerns that the government will target patients or their families because they received gender-affirming care.

During discussions with Hospital counsel, DOJ attorneys suggested that the Hospital might be able to anonymize patient records in the first instance by replacing patients' names and other identifying information with codes in the produced documents. Manning Decl. ¶ 4(g). But this does not change the analysis. The DOJ attorneys made clear they would reserve the right to require unmasking of patient identities as the investigation progressed. *Id.*; *cf. Eden*, 379 F.3d at 553 (dismissing agency's "'inten[tion]' to implement an anonymous coding system" where there was "no binding policy" requiring anonymization). And patients and families would legitimately fear their identities could be reverse-engineered: "Even if all the [patients] whose records the government seeks know what 'redacted' means, they are bound to be skeptical that redaction will conceal their identity from the world." *Nw. Mem'l Hosp.*, 362 F.3d at 929. Moreover, anonymizing patient and billing records for thousands of patients would impose exceedingly onerous financial and logistical burdens on the Hospital. It is not even clear that such coding could be accomplished, given the number of patients and the breadth of the requests.

*Fourth*, DOJ has no compelling need for access. DOJ admitted that it has no allegation or information that Seattle Children's engaged in illegal conduct. Because the government is unable to articulate any reason for its investigation other than marching orders from above, the burden on the privacy interests of Seattle Children's patients and their families, and the financial and logistical burdens on the Hospital, far outweigh the government's interests. *Finally*, no statutory

MOT. SET ASIDE OR MODIFY
CASE NO. _____

11

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

mandate or legitimate public policy weighs in favor of access.

***Personnel files.*** The same analysis applies for the requested personnel files. There are no meaningful limits to the request, which would cover several thousand workforce members. Ex. 1, Request 1; Ojemann Decl. ¶ 35. Even limiting the request to individuals associated with the provision of gender-affirming care, their supervisors and executives up the management chain, and individuals associated with billing for gender-affirming care, that subset could encompass hundreds of individuals. Ojemann Decl. ¶ 36; *see* Manning Decl. ¶ 4(f). The relevance of these files to DOJ's "investigation" is utterly unclear. What content in a nurse's personnel records would inform whether healthcare fraud has occurred? The privacy burdens on the Hospital's staff, and the legitimate fears for their safety, are immense. *See, e.g.*, Ex. 12 (study finding 70% of 117 providers surveyed reported "receiving threats specific to delivering gender-affirming care").

### III. DOJ MUST ESTABLISH COMPLIANCE WITH 18 U.S.C. § 3486.

The government also must establish that the subpoena complies with Section 3486's procedural requirements. *Powell*, 379 U.S. at 57. Section 3486 confers authority to issue subpoenas only upon the Attorney General. 18 U.S.C. § 3486(a)(1)(A)(i)(I). While the Department's Justice Manual identifies the AAG for the Criminal Division and individual U.S. Attorneys as the Attorney General's delegates to exercise such authority, it does not identify the AAG for the *Civil* Division. DOJ, Justice Manual 9-44.201. Accordingly, the subpoena appears to be procedurally defective.

### IV. IF NECESSARY, THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING.

The Court should deny enforcement, but if necessary, it should conduct an evidentiary hearing. *Supra* p.7. The evidence recounted above raises more than a "plausible inference" that the purpose of the subpoena is to force the Hospital to stop providing lawful care. *Clarke*, 573 U.S. at 254.

MOT. SET ASIDE OR MODIFY  
CASE NO. _____  
12  
CORR CRONIN LLP  
1015 Second Avenue, Fl. 10  
Seattle, WA 98104-1001  
Telephone: (206) 625-8600

## CONCLUSION

The Hospital respectfully asks the Court to set aside the DOJ's subpoena duces tecum No. 25-1431-016.

RESPECTFULLY SUBMITTED this 8th day of July 2025. I certify that this memorandum contains 4,200 words, in compliance with Local Civil Rules.

By: /s/ Jeffrey B. Coopersmith
Jeffrey B. Coopersmith
**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104
Tel.: (206) 625-8600
Fax: (206) 625-0900
jcoopersmith@corrcronin.com


David M. Zinn*
Christopher N. Manning*
Jennifer G. Wicht*
Amy M. Saharia*
Patrick C. Hynds*
Dana B. Kinel*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, D.C. 20024
Tel.: (202) 434-5000
Fax: (202) 434-5029
dzinn@wc.com
cmanning@wc.com
jwicht@wc.com
asaharia@wc.com
phynds@wc.com
dkinel@wc.com

*pro hac vice forthcoming*

*Attorneys for Movant Seattle Children's Hospital*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Civil Rule 5, I hereby certify that on this 8th day of July 2025, the foregoing and the exhibits referenced therein were served on the following individuals by U.S. mail and electronic mail:

**Brett Shumate**
United States Department of Justice
Civil Division
950 Pennsylvania Ave. NW
Washington, DC 20530
Brett.A.Shumate@usdoj.gov

**Patrick R. Runkle**
**Ross Goldstein**
**Francisco Unger**
**Jordan C. Campbell**
Consumer Protection Branch
United States Department of Justice
Civil Division
950 Pennsylvania Ave. NW
Washington, DC 20530
Patrick.R.Runkle@usdoj.gov
Ross.Goldstein@usdoj.gov
Francisco.L.Unger@usdoj.gov
Jordan.C.Campbell@usdoj.gov

Dated: July 8, 2025

_____
Jeffrey B. Coopersmith

MOT. SET ASIDE OR MODIFY
CASE NO. _____

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600