_____ FILED    _____ ENTERED
_____ LODGED   _____ RECEIVED

JUL 2 2 2025  MH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| | Case No.: 2:25-MC-00041-JHC |
| IN RE SUBPOENA DUCES TECUM NO. 25-1431-016 | GOVERNMENT'S OPPOSITION TO SEATTLE CHILDREN'S HOSPITAL'S MOTION TO QUASH |
| | UNDER SEAL |

The Government recognizes that the investigation concerns potential misconduct undertaken in the context of an ongoing political debate, but that fact does not in any way make the subpoena invalid or unenforceable. Indeed, Seattle Children's Hospital ("SCH") does not make a showing that the administrative subpoena in question is procedurally defective, and it does not identify a lawful basis to avoid complying with a valid subpoena. This Court should overrule SCH's meritless objections and enforce the subpoena.

## BACKGROUND

The Government is conducting an investigation into, among other things, whether off-label promotion and/or unlawful dispensing of puberty blockers and cross-sex hormones for use by minors violated federal law, including the Food, Drug, and Cosmetic Act ("FDCA"). Because public or private insurance plans were presented with claims related to off-label use of these

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 1
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1 medications, such a violation of the FDCA would constitute a "federal health care offense" as

2 defined by 18 U.S.C. § 24.

3      SCH acknowledges that it provides gender-related care to minors, including the use of

4 puberty blockers and cross-sex hormones that are one of the foci of the investigation. SCH

5 Memorandum ("Memo.") at 4–5. Puberty blockers are administered off-label for treating gender

6 dysphoria, because they are not authorized by FDA for that use. *United States v. Skrmetti*, 605

7 U.S. __, 145 S. Ct. 1816, 1841 (June 18, 2025) (Thomas, J., concurring).

8      The instant subpoena to SCH was duly issued on June 13, 2025, and served on SCH. The

9 return date specified in the subpoena was set as July 9, 2025. SCH has not complied with the

10 subpoena and has filed this motion to quash the subpoena.

11                                    **ARGUMENT**

12      "The scope of judicial review in an administrative subpoena enforcement proceeding is

13 quite narrow." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012).[1]

14 "The critical questions are: (1) whether Congress has granted the authority to investigate; (2)

15 whether procedural requirements have been followed; and (3) whether the evidence is relevant

16 and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426,

17 1428 (9th Cir. 1983) (en banc).

18      The Supreme Court, for its part, has stated that enforcing an administrative subpoena—a

19 creature of statute—should not involve examining the merits of the investigation or looking into

20 the Government's decision to institute such an investigation. *See United States v. Powell*, 379

21 U.S. 48, 56 (1964) ("There is no intimation in the legislative history that Congress intended the

22 courts to oversee the [Government's] determinations to investigate."). Instead, the Court looks to

23 the language of the statute to see if it should be enforced. *Id*. And as long as "[t]he evidence

24 sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose," it is

25

26

---

[1]      Internal citations and quotations omitted throughout.

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 2
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1   "the duty of the District Court" to enforce the administrative subpoena. *Endicott Johnson Corp.*

2   *v. Perkins*, 317 U.S. 501, 509 (1943).

3       SCH's motion invites this Court to ignore these well-established and unambiguous

4   precedents because, at base, the subpoena at issue in this matter involves a controversial topic

5   over which there are many high-profile political debates. Conspicuously absent from the

6   controlling precedent above, however, is any suggestion that a district court should quash an

7   administrative subpoena because the underlying conduct involves politically sensitive subject

8   matters or because the subpoena recipient has political disagreements with the Executive Branch.

9       SCH is correct that gender-related care for minors is an area in which the United States

10   has made strong statements. However, SCH is incorrect that the Executive Branch's position as

11   to gender-related medical treatments for minors provides a legal basis to quash this subpoena.

12   Indeed, while SCH's motion raises a number of issues that sound in public policy, states' rights,

13   and politics, the motion does not meaningfully tie those objections to a statutory basis to quash

14   an administrative subpoena properly issued under 18 U.S.C. § 3486.

15   **I.**     **The Subpoena Is Valid and Enforceable**

16       a.   *The Subpoena is Procedurally Proper*

17       "We begin, as always, with the text of the statute." *Khatib v. County of Orange*, 639 F.3d

18   898, 901-902 (9th Cir. 2011). The authorizing statute at issue was passed in 1996 as part of the

19   Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the text of the

20   statute sets forth a small number of basic requirements for the subpoena to be procedurally valid.

21       Here, the subpoena was issued in the investigation of FDCA-related federal health care

22   offenses. 18 U.S.C. § 3486(a)(1)(A)(i)(I). It was signed by an Assistant Attorney General of the

23   United States using delegated authority from the Attorney General,[2] it was served on SCH, and

24

25   [2]   There is a delegation of authority from the Attorney General to the Assistant Attorney General of the
Civil Division to issue HIPAA subpoenas in criminal investigations involving violations of the FDCA

26   related to federal health care benefit programs. Decl. of Lisa K. Hsiao (July 22, 2025) (Ex. A).

GOVERNMENT'S OPPOSITION TO SEATTLE            United States Department of Justice
CHILDREN'S HOSPITAL'S MOTION TO               Consumer Protection Branch
QUASH – p. 3                                   P.O. Box 386
2:25-MC-00041-JHC                         Washington, DC 20044
                                           (202) 353-4218

it called for the production of nonprivileged documents arguably relevant to the investigation within 500 miles of SCH. 18 U.S.C. § 3486(a)(3). Because the subpoena is procedurally valid, it should be enforced.

b. *There Is No Free-Standing "Improper Purpose" Exception*

SCH mischaracterizes the instant federal health care offense investigation as an improper federal Government effort to eliminate gender-related care, and asserts that the subpoena should be quashed on that basis. But SCH gets the law on administrative subpoenas entirely backward by suggesting that this Court should undertake a plenary, free-wheeling inquiry into whether this subpoena has been issued for an "improper purpose." Memo. at 6-9. Actual binding precedent, in contrast, describes this proceeding as "summary in nature" and articulates the "extraordinarily heavy burden" that a subpoena recipient faces in opposing a procedurally proper subpoena. *Solis v. Forever 21, Inc.*, No. 12-09188, 2013 U.S. Dist. LEXIS 64462, *6 (Mar. 7, 2013) (collecting cases).

The Eighth Circuit specifically rejected arguments indistinguishable from SCH's in the context of 18 U.S.C. § 3486 subpoenas and held that there is "no legal authority for requiring the Government to justify its administrative subpoenas by revealing . . . any [] facts revealing the motives behind a lawful investigation." *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012).

In fact, SCH's argument invites this Court to do exactly what all of these courts have said it should not do in an administrative subpoena enforcement matter, which is to litigate the Executive Branch's decision to investigate a matter and adjudicate the merits of a theoretical future enforcement action. In contrast to SCH's suggestions, the Supreme Court has held repeatedly that enforcement of administrative subpoenas "must not be limited by forecasts of the probable result of the investigation," *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 216 (1946), and that an agency may "investigate merely on suspicion that the law is being violated,

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 4
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1  or even just because it wants assurance that it is not," *United States v. Morton Salt Co.*, 338 U.S.

2  632, 642–43 (1950).

3         c.   *The Subpoena Was Not Issued for an "Improper Purpose"*

4        Even if the Court were to examine the subpoena in light of SCH's accusation of a

5  purported "improper purpose," SCH has not met its "extraordinarily heavy burden" to prove that

6  such an improper purpose exists. *United States v. Kis*, 658 F.2d 526, 537 (7th Cir. 1981). The

7  courts that have allowed a limited evaluation of the Government's motivations in administrative

8  subpoena proceedings have described the relevant inquiry as whether the movant has

9  demonstrated that the investigation is being conducted for an undisclosed, nefarious purpose, or

10  whether the subpoena is not actually attempting to obtain evidence in furtherance of an

11  investigation of potential federal offenses. *See Solis v. Forever 21, Inc.*, 2013 U.S. Dist. LEXIS

12  64462, *19 (C.D. Cal. Mar. 7, 2013) (collecting cases).

13        SCH has not met the heavy burden imposed by this standard. SCH's political concerns

14  with Executive Branch officials amount to "speculation" and "assertion[s]" that the subpoena is

15  improper, but offer little more.[3] *Id.* Nothing SCH presents alters the fact that the Government is

16  attempting to obtain evidence using a Congressionally authorized subpoena power. If the

17  subpoena uncovers violations of federal law in the delivery of gender-related care to minors, and

18  if the Government addresses this misconduct, "this is not an improper use of the subpoena

19  power . . . [r]ather, it is a desired result." *Forever 21, Inc.*, 2013 U.S. Dist. LEXIS 64462, at *19.

20        Moreover, none of the Government's statements on this topic evince a desire to

21  investigate SCH pretextually *for an undisclosed, nefarious reason* or to take actions against SCH

22

23
---
[3]  Similarly, SCH's request for some sort of evidentiary hearing or discovery into the Government's

24  investigation fails under the relevant law, which requires "extraordinary circumstances" to authorize
    discovery. *United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995). SCH does not mention the

25  extraordinary circumstances test or attempt to meet it, nor does SCH articulate what it hopes to discern
    from such evidence. "[A]s a general matter, a defendant is not entitled to engage in counter-discovery

26  to find grounds for resisting a subpoena." *Id.* (collecting cases).

GOVERNMENT'S OPPOSITION TO SEATTLE         United States Department of Justice
CHILDREN'S HOSPITAL'S MOTION TO             Consumer Protection Branch
QUASH – p. 5                                   P.O. Box 386
2:25-MC-00041-JHC                      Washington, DC 20044
                                        (202) 353-4218

1   specifically in a manner *inconsistent with the law*—which would be necessary to show "bad

2   faith" under administrative subpoena law.[4] *See United States Immigr. & Customs Enf't v. Gomez*,

3   445 F. Supp. 3d 1213, 1216 (D. Colo. 2020) (subpoena ordered enforced because recipient did

4   not show that subpoena was "pretext for some unstated, nefarious, legally inappropriate reason").

5   While SCH makes much of certain executive orders with respect to gender-related medical

6   treatments on minors, the actual direction from the Attorney General to conduct this investigation

7   is direct and clear: it authorizes only "appropriate" investigations of potential (i) FDCA

8   violations in relation to "manufacturers and distributors engaged in misbranding by making false

9   claims about the on- or off-label use of" or unlawful "promotion of off-label uses of" certain

10   drugs used in gender-related treatments of minors; and (ii) "false claims submitted to federal

11   health care programs." These statements reflect the Executive Branch's view that certain

12   conduct in this general area may be illegal, that it should be investigated, and that those who

13   committed crimes should be punished. *See* SCH Exs. 2, 5.

14        The Executive Branch's interest in ensuring that the provision of certain medications is

15   carried out without running afoul of federal law is entirely unremarkable. Just as federal officials

16   may prioritize scrutinizing the fentanyl distribution chain—many parts of which are legal due to

17   the fact that fentanyl is an FDA-approved medication—to stem opioid overdoses, federal

18   officials may prioritize ensuring that gender-related health care to minors is being delivered in a

19   way that does not violate federal law. Indeed, SCH's argument boils down to a basic non-

20   sequitur: (1) the President wants to use existing federal law to curtail the practice of gender-

21   related medical treatments on minors; (2) this is an improper purpose because SCH believes such

22   treatments should be legal; and (3) the subpoena therefore must have been issued for an improper

23   purpose. Memo. at 12–17. But the Supreme Court recently held that eliminating gender-related

24   pharmaceutical and surgical treatments of minors is a rational Governmental purpose that is not

25

26   [4]   The Supreme Court has cautioned about "reviewing a Presidential directive . . . by reference to extrinsic statements." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018).

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 6
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

improper at all. *Skrmetti*, 145 S. Ct. at 1843–49. If a state Government can properly and rationally ban gender-related pharmaceutical and surgical care for minors in its entirety, the Executive Branch is obviously permitted to pursue the same policy goal within the bounds of the law.

SCH also does not offer the Court a coherent standard by which to judge whether a subpoena is issued for an "improper purpose" on a politically charged topic. SCH obviously believes that its provision of gender-related care for minors is "proper," and so SCH also believes the federal Government's investigations into federal health care offenses related to such practices must *ipso facto* be "improper." But on that circular reasoning, any recipient of a subpoena could obtain quashal by asserting that it acted properly. SCH's standard appears to be that if it disagrees politically with the policy positions of the current administration and engages in conduct related to those policy positions, it should be entitled to quash subpoenas duly authorized by federal law and/or obtain discovery about the investigation. That is not the standard. *See SEC v. McGoff*, 647 F.2d 185, 194 (D.C. Cir. 1981) (holding that an allegation of political targeting by the Carter Administration was not enough to authorize inquiry into the agency's motives in issuing an administrative subpoena).

d. *The Investigation Basis Is Legitimate*

Even if the Court considers the basis of the investigation, the Court need not look far to assure itself that the investigation is legitimate. As just one data point showing adequate predication for this investigation, Justice Thomas' recent concurrence in *Skrmetti* lays out numerous concerning pieces of evidence suggesting that the *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8 ("SOC 8"), published by the World Professional Association for Transgender Health ("WPATH") is based "on insufficient evidence and allows politics to influence its medical conclusions." *Skrmetti*, 145 S. Ct. at 1845–49.

Noting "the lack of consensus over the efficacy and ethics of pediatric sex-transition treatments," Justice Thomas detailed how gender-related care for minors in the United States has

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 7
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1  been littered with potential consumer-protection violations: false statements made to induce

2  patient and parental consent to off-label drug use and other life-altering procedures; powerful

3  pharmaceuticals casually being given off-label to very young minors, causing lifelong side

4  effects; purported treatment guidelines based on false or insufficient evidence; and other

5  alarming trends that the Executive Branch could reasonably believe deserve exploration. *Id.*

6  Furthermore, much of the data cited by Justice Thomas came to light in *Boe v. Marshall*, 22-cv-

7  184 (M.D. Ala.), where WPATH undertook significant and ultimately unsuccessful efforts to

8  block access to records showing SOC 8's development.[5]  SCH does not even mention these

9  issues, let alone seek to explain why the Government is not permitted to investigate them.

10       Moreover, while SCH is correct that the FDCA does not generally regulate the practice of

11  medicine, federal health care law obviously does proscribe many practices directly related to the

12  practice of medicine, such as: the unlawful dispensing of unapproved drugs, prescription

13  medications, and controlled substances, 21 U.S.C. §§ 331(a), 841; the off-label promotion of

14  prescription medications, 21 U.S.C. § 331(a); the making of false statements in relation to claims

15  to public and private insurance payors, 18 U.S.C. § 1035; fraud on patients and insurance payors,

16  18 U.S.C. § 1347; and many others. SCH's suggestion that the federal Government does not have

17  a role in ensuring medical practitioners obey federal law while practicing medicine is absurd, as

18  is its attempt to equate the issuance of this subpoena with an unlawful executive attempt to hijack

19  States' rights to regulate the practice of health care.

20       SCH also argues that Government enforcement in this area will purportedly chill the

21  rights of Washington residents and others to receive gender-related care under state law. The

22

23  _____

24  [5]  For example, in denying an effort by WPATH to keep records of SOC 8's development from being
     publicly released, the District Court observed that WPATH "touts its guidelines and standards of care
     for treating transgender children as the product of rigorous science and broad consensus. Given this

25  wide acceptance of what WPATH claims to be reliable evidence, one would think it would be willing
     and eager to demonstrate as much. It is not." *Boe v. Marshall*, 22-cv-184 (M.D. Ala.), (ECF No, 754,

26  *Memorandum Opinion and Order Granting Time Sensitive Motion for Relief*, June 9, 2025.)

1    argument is meritless. If persons in Washington committed federal health care offenses while

2    delivering gender-related treatment for minors, federal Government enforcement of federal law

3    against those persons would be fully consonant with the Supremacy Clause and would not

4    infringe the rights of Washington residents under state law—because they have no right under

5    state law to violate federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993)

6    ("Where [state law] conflicts with, or frustrates, federal law, the former must give way.").

7    Moreover, SCH and any other person will be able to raise any colorable defenses they wish in

8    any enforcement action the Government may or may not ultimately bring in this space.

9    **II.    The Requests Seek Relevant Evidence**

10        SCH objects to the breadth of the subpoena, but its argument is underdeveloped and

11   meritless. As described above, federal health care offenses in this space are potentially wide-

12   ranging and the statute does not distinguish between targets, subjects, and witnesses. Here, the

13   Government has not made a decision as to whether SCH is a target—so whether SCH itself

14   complied with all relevant laws is not relevant. SCH may be simply a witness to, for example,

15   pharmaceutical companies promoting puberty blockers for off-label use. Or it may be a witness

16   to whom other people or entities directed false statements on the topic of gender-related

17   pharmaceuticals for minors. Or SCH personnel may have committed federal health care offenses

18   without the knowledge of SCH management. SCH's motion does not discuss these obvious

19   examples or explain why they are improper. Because SCH has failed to show such objectives are

20   not "irrelevant to any lawful purpose," the subpoena must be enforced on these grounds alone.

21   *Endicott Johnson Corp*, 317 U.S. at 509.

22        Indeed, "the measure of relevance used in subpoena enforcement actions is quite broad."

23   *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994); *Sandsend Fin.*

24   *Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (an

25   administrative subpoena will survive a relevance challenge so long as it "touches a matter under

26   investigation"). Because SCH is an acknowledged provider of the type of off-label

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 9
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1  pharmaceuticals under investigation, the individual requests—which seek records related to the

2  provision of those drugs and services—are also valid under the statute.

3  **III.    SCH's Privacy Arguments Are Meritless**

4          SCH specifically objects to the Government's requests for records of services provided to

5  patients and identifying information of patients and providers. First, as a legal matter, 18 U.S.C.

6  § 3486 subpoenas are colloquially referred to as "HIPAA subpoenas" not because they are used

7  to investigate HIPAA violations *per se*, but rather because Congress enacted the provision as part

8  of HIPAA specifically to allow the Government to obtain HIPAA-protected health information of

9  patients in health care investigations. It is hard to understand how the Government's request for

10  patient files is improper when the statute at issue was passed in order to allow the Government to

11  obtain these specific items. For much the same reason, SCH's proposed multi-factor test for the

12  Government to obtain medical records via a subpoena is simply inapplicable to this statute

13  because it would frustrate both the statutory language and purpose of HIPAA. Congress already

14  struck the appropriate balance in this statute and specifically contemplated the Government

15  obtaining medical records of the type requested here. *In re Subpoena Duces Tecum*, 228 F.3d

16  341, 351 (4th Cir. 2000) (reversing quashal of § 3486 subpoena and ordering the production of

17  medical records).

18          As but one example of how SCH's arguments are skin deep, SCH cites Judge Posner's

19  decision *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929, 933 (7th Cir. 2004), and describes the

20  case as "affirming decision to quash subpoena for anonymized medical records of abortion

21  patients." Memo. at 11. But actually reading Judge Posner's decision reveals that: (1) the

22  Government sought the records via a trial subpoena, to which a different test applies; and (2)

23  Judge Posner actually contemplated that the Government may have been able to obtain the

24  medical records at issue via a 18 U.S.C. § 3486 subpoena—the exact type of subpoena at issue

25  here. *Ashcroft*, 362 F.3d at 924-925.

26

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 10
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

1      Indeed, the Fourth Circuit has already rejected an argument indistinguishable from SCH's

2  argument here and held that the Government's interest in obtaining patient files using a § 3486

3  subpoena outweighs patient privacy concerns, because the disclosure to the Government of

4  patient records is not "meaningfully distinguishable from a host of other unpleasant invasions of

5  privacy that are associated with many facets of health care." *In re Subpoena Duces Tecum*, 228

6  F.3d at 351.

7      The Fourth Circuit also held that privacy concerns about patient records were unfounded

8  because this statute already provides privacy protection for patient information. *Id.* ("[The

9  Government's] interest outweighs the privacy rights of those whose records were turned over to

10  the Government, particularly in light of the limitation placed on uses of subpoenaed information

11  by § 3486."). To wit, the statute requires the Government to return records if the investigation

12  does not ripen into an enforcement action. 18 U.S.C. § 3486(a)(8). More relevant to SCH's

13  objections, the statute generally prohibits the Government from using or disclosing "health

14  information about an individual" that is obtained via this subpoena, and it further generally

15  prohibits the Government from using protected health information about a patient against that

16  patient. 18 U.S.C. § 3486(e). Finally, the statute makes people and entities responding to these

17  types of subpoenas immune from civil liability for responding in good faith. 18 U.S.C.

18  § 3486(d).

19      Patient health information is frequently sought and obtained in federal health care offense

20  investigations—in fact, it is difficult or impossible to investigate the provision of health care

21  services to patients if the Government cannot obtain information about the provision of health

22  care services to patients. SCH's proposed exceptions would completely swallow the rule.

23  Nonetheless, the Government is ready and willing to negotiate with SCH about the scope of

24  these specific requests in order to attempt to address some of its concerns.

25

26

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 11
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

**CONCLUSION**

The Government respectfully requests that the Court overrule SCH's objections and compel SCH to comply with the subpoena.

RESPECTFULLY SUBMITTED, this 22nd day of July, 2025. I certify that this memorandum in opposition contains 3,583 words, in compliance with the Local Civil Rules.

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Consumer Protection Branch


*/s/ Patrick R. Runkle*
ROSS S. GOLDSTEIN
PATRICK R. RUNKLE
Assistant Directors
SCOTT DAHLQUIST
Trial Attorney

U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
Tel: (202) 353-4218
ross.goldstein@usdoj.gov

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 12
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2025, I served the foregoing Memorandum in Opposition via electronic mail pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure to the following counsel of record, who has consented in writing to electronic service:

Jeffrey B. Coopersmith
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104
jcoopersmith@corrcronin.com

David M. Zinn
Christopher N. Manning
Jennifer G. Wicht
Amy M. Saharia
Patrick C. Hynds
Dana B.Kinel
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
dzinn@wc.com
cmanning@wc.com
jwicht@wc.com
asaharia@wc.com
phynds@wc.com
dkinel@wc.com

Dated this 22nd day of July, 2025.

/s/ Ross S. Goldstein
ROSS S. GOLDSTEIN

GOVERNMENT'S OPPOSITION TO SEATTLE
CHILDREN'S HOSPITAL'S MOTION TO
QUASH – p. 13
2:25-MC-00041-JHC

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218