The Honorable John H. Chun

FILED (DROP BOX)

JUL 25 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                             DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SEATTLE CHILDREN'S HOSPITAL,<br><br>*Movant*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Respondent*. | Case No. 2:25-MC-00041-JHC *SEALED*<br><br>REPLY IN SUPPORT OF MOTION TO SEAL DOCKET<br><br>UNDER SEAL |

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

**CORR CRONIN LLP**
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

DOJ cites no case in its opposition to the motion to seal where the validity of a subpoena issued as part of a potential criminal investigation was litigated in public. It cites no case recognizing a common law right to access such proceedings. The reason for this failure is obvious: as DOJ has long recognized, but ignores in its brief, uncharged parties in criminal investigations have privacy and reputational interests worthy of protection. Those interests are all the more salient here given DOJ's implicit concession that it has no allegation, much less evidence, of wrongdoing by Seattle Children's.

To state the obvious, DOJ does not normally conduct criminal investigations in public. But here, one day *after* Seattle Children's filed this motion to seal, DOJ took self-help and issued a press release announcing its issuance of 20 subpoenas to providers of gender-affirming care. In doing so, it stated that "[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable by this Department of Justice." Ex. 23.

As explained in Seattle Children's Motion to Set Aside, this subpoena is part of a political exercise intended to pressure hospitals to stop providing gender-affirming care and patients from seeking it. The week after Seattle Children's filed its motion, the White House press secretary responded to a question about DOJ's subpoenas by noting that four hospitals had ceased providing gender-affirming care and promising "further action" to stop the "barbaric practices" of gender-affirming care that no "innocent child should have to endure." Ex. 27, 4:8-9, 17. Public litigation of the subpoena's validity would advance DOJ's improper purpose by trumpeting to patients and providers, before any adjudication by this Court, that DOJ intends to capture their personal information. Such publicity would traumatize and threaten the safety and privacy of the Hospital's patients and providers, which DOJ unfairly minimizes. The Court should grant the motion to seal.

1. DOJ (at 2) invokes the common law right of access in opposing sealing. Although there is a preference for public access to court records, "the common law presumption of access does not even come into play for court records 'traditionally kept secret.'" *Forbes Media LLC v. United States*, 61 F.4th 1072, 1081 (9th Cir. 2023). And even when the presumption applies, courts may seal proceedings when there are "compelling reasons" for keeping records under seal. *Kamakana*

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

1

**CORR CRONIN LLP**
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

*v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir 2006). "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citation omitted). In making that determination, courts will, among other things, "take[] account of the privacy rights of individuals" and the "risk of serious injury" that disclosure would cause "to innocent third parties." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) (citation omitted).

DOJ does not establish that proceedings related to administrative subpoenas in criminal investigations are traditionally open to the public. Although DOJ claims (at 2) that litigation concerning only "two categories of judicial records" (grand-jury materials and warrant materials) have traditionally been kept secret, the Ninth Circuit has rejected that proposition. *See Forbes Media*, 61 F.4th at 1082 ("we have never suggested these are the only examples"). The Ninth Circuit has recognized that other proceedings, given their "similarities" to grand-jury and warrant proceedings, likewise do not implicate a common law right of access. *See id.* (All Writs Act technical assistance proceedings). DOJ cites no case recognizing a common-law right of access to discovery proceedings in criminal investigations. That should end the analysis.

Although DOJ claims (at 5) that there is no "legal basis" to seal the docket, Local Rule 5 and this Court's inherent authority to seal court records, *see United States v. Padilla-Lopez*, 2023 WL 8594402, at *1 (9th Cir. Dec. 12, 2023), provide more than ample basis. Contrary to DOJ's suggestion (at 5-6), nothing in the text of 18 U.S.C. § 3486 purports to limit this Court's inherent authority to seal its dockets.

2. Even if the presumption of access applied, compelling reasons exist to seal this proceeding. Publication of DOJ's potential criminal investigation of Seattle Children's for federal healthcare offenses would expose Seattle Children's and its workforce to unwarranted "public ridicule" even if the Hospital is never charged or is "exonerated." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979). DOJ's suggestion (at 2-3) that the only reason criminal investigation-related proceedings are traditionally sealed is to avoid "damage to the criminal investigatory process" is incorrect. Protecting the reputations of uncharged parties has long been

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

2

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

a basis for sealing—including in situations beyond grand-jury proceedings and warrant materials. *See Forbes Media*, 61 F.4th at 1079-80 (technical assistance order proceedings); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (grand jury); *Times Mirror*, 873 F.2d at 1215-16 (warrants); *Matter of the Application of WP Co.*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016) (warrant materials). Similarly, in the FOIA context, courts recognize that "persons involved in FBI investigations—even if they are not the subject of the investigation—have a substantial interest in seeing that their participation remains secret." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (cleaned up) (FBI investigation materials); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (names of eyewitnesses and FBI agents).

The only case involving an administrative subpoena DOJ cites (at 6) is *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012). But in that case the district court unsealed the docket only *after* it enforced the subpoena. *Id.* at 139. By the time of the unsealing order, "the global press" had already reported on the DOJ investigation. *Id.* at 141. Accordingly, because "the [g]overnment's investigation of [the movant] has been public knowledge for some time," the district court held that the subpoena recipient's reputational interests did not warrant sealing. *Id.* The same is not true here.

The Hospital has substantial reputational interests at stake, as DOJ issued a subpoena pursuant to a Presidential directive to criminally investigate "fraud" and the "mutilation" of children. Ex. 2 § 8. Although DOJ contends (at 4) that there are no "specific factual findings" supporting the need to protect the Hospital's reputation, Dr. Ojemann, the Hospital's Chief Physician Executive, explained that disclosure of the subpoena "would unfairly tarnish the Hospital's reputation," could "potentially instill doubt in the community about the integrity of the institution," and could deter patients from seeking care from Seattle Children's. Ojemann Decl. ¶¶ 41-44. The government's public statements impugning the parties it is investigating for provision of gender-affirming care make the reputational harm evident. Exs. 2-6, 23-24, 27-28. DOJ offers no rebuttal to any of this.

DOJ (at 3-4) attempts to dismiss the reputational harms to Seattle Children's as merely

REPLY IN SUPPORT
MOT. TO SEAL DOCKET 3
CASE NO. 2:25-MC-00041-JHC *SEALED*

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

potential embarrassment. But *Kamakana*, the case on which DOJ principally relies, was purely a civil matter. 447 F.3d 1172, 1175.[1] Criminal investigations and the moral opprobrium that attaches to allegations of criminal misconduct are different in kind. *See Douglas Oil*, 441 U.S. at 219; *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014). That is why DOJ's own Justice Manual recognizes "the privacy and reputation interests of uncharged parties" in criminal cases and placed stringent limitations on when prosecutors can identify uncharged parties publicly. *See* DOJ, Justice Manual 9-27.760. DOJ ignores its Manual in its opposition.

Foisting these reputational harms on the Hospital before the Court has even decided the subpoena's validity risks legitimizing the subpoena's improper purpose. As DOJ itself recognizes, sealing is appropriate where "the court files might have become a vehicle for improper purposes." Opp. 3-4 (quoting *Kamakana*, 447 F.3d at 1179). As explained in Seattle Children's Motion to Set Aside, the subpoena is part of a whole-of-government campaign to "end" gender-affirming care for minors. Mot. Set Aside at 7-9. Although DOJ asserts as ipse dixit that the subpoena was "lawfully issued in the course of an investigation of federal health care offenses," Opp. at 4, that is the core question in this proceeding. Unless the Court resolves that question in DOJ's favor (it should not), the proceedings should remain under seal.

Although DOJ does not typically announce its criminal investigations, it did so here, which is itself proof of its improper political purpose. One day after Seattle Children's filed this motion to seal, high-ranking DOJ officials announced the investigation at a day-long FTC conference and the DOJ then issued a press release noting the issuance of 20 subpoenas. Exs. 23-24; *supra* p. 1. DOJ's media campaign is already achieving its improper purpose, at least in part. Since the press release, the University of Chicago Medical Center has suspended provision of gender-affirming pediatric care "in response to continued federal actions." Ex. 25. And Children's National Hospital announced it will "be discontinuing the prescription of gender-affirming medications"

---

[1] DOJ cites another civil case, *Oliner v. Kontrabecki*, for the proposition that avoiding embarrassment is not a compelling reason to seal, but there "the proceedings had been a matter of public record" for a decade. 745 F.3d 1024, 1026 (9th Cir. 2014).

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

4

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

due to "escalating legal and regulatory risks to Children's National, [its] providers, and the families [it] serve[s]." Ex. 26. Publication of the subpoena and these proceedings would further chill the provision and receipt of gender-affirming care—which is precisely the government's purpose.

3. Seattle Children's "well-founded and legitimate fears of stigmatization, harassment, and further violence" justify sealing these proceedings. *Chang v. Republic of S. Sudan*, 548 F. Supp. 3d 34, 38 (D.D.C. 2021). As Dr. Ojemann explains, providers of "gender-affirming care have recently reported being the targets of harassment and violent threats." Ojemann Decl. ¶ 45. Some "hospitals providing gender-affirming care have received bomb threats," and "at least one" Seattle Children's provider "has received a suspicious package with concerning notes inside." *Id.* ¶¶ 45-46. There has also been public reporting of harassment of providers of gender-affirming care. Exs. 12-16. To protect its patients and providers, Seattle Children's has "hired a full-time security guard and installed panic buttons at the Gender Clinic"; "has conducted drills for bomb threats and active shooters"; and has "developed processes for managing phone threats related to gender-affirming care." *Id.* ¶ 45. "Seattle Children's is concerned that if the Subpoena and investigation were made public, members of the general public may seek to identify, harass, and/or attack patients, their families, physicians, medical providers, or Hospital staff." *Id.* ¶ 47. Those reasonable fears militate in favor of sealing these proceedings.

DOJ dismisses (at 4-5) Seattle Children's fears of harassment and violence. But DOJ's claim that Seattle Children's "offers no actual 'specific factual findings'" to support these concerns is rebutted by Dr. Ojemann's declaration and the exhibits attached to the Manning Declaration. This evidence, unaddressed by DOJ, confirms that concerns about harassment and threats against providers of gender-affirming care are far from speculative. *See* Exs. 12-16; Ojemann Decl. ¶¶ 45-47. DOJ also argues (at 5) that disclosure of the subpoena would not further endanger Seattle Children's providers and patients because "[t]he [H]ospital is already widely known as a provider of gender-related care to minors," and DOJ's investigation of providers of such care "is also widely known." But the investigation is "widely known" only because DOJ publicly announced it, broadcasting that "[m]edical professionals and organizations that mutilated children in the service

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

5

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

of a warped ideology will be held accountable by this Department of Justice." Ex. 23. Tying Seattle Children's to that inflammatory rhetoric invites others hostile to gender-affirming care to take matters into their own hands. *Id.* Amid an already over-heated national debate, calling out a specific hospital, its providers, and its patients is dangerous. *Cf. Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1088 (9th Cir. 2002) (en banc) (naming specific abortion providers on posters and online lists constituted a "true threat" in the context of previous violence against abortion providers).

Seattle Children's is not arguing, as DOJ claims (at 6), that the proceeding must be sealed merely "because the subject matter is controversial and involves medical treatment." Even if this subpoena did not involve gender-affirming care, the Hospital's interest in shielding from public scrutiny its involvement in a potential criminal investigation would warrant sealing. The very real concerns for the privacy and safety of the Hospital's patients and providers are an additional reason for sealing.

## **CONCLUSION**

For the foregoing reasons, Seattle Children's respectfully requests that these proceedings be kept under seal.

RESPECTFULLY SUBMITTED this 25th day of July 2025. I certify that this memorandum contains 2098 words, in compliance with Local Civil Rules.

CORR CRONIN LLP

By: _____
Jeffrey B. Coopersmith
Steven W. Fogg
1015 Second Avenue, Floor 10
Seattle, Washington 98104
Tel.: (206) 625-8600
Fax: (206) 625-0900
jcoopersmith@corrcronin.com
sfogg@corrcronin.com

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

6

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

| | |
|---|---|
| 1 | |
| 2 | David M. Zinn* |
| 3 | Christopher N. Manning* |
| | Jennifer G. Wicht* |
| 4 | Amy M. Saharia* |
| | Patrick C. Hynds* |
| 5 | Dana B. Kinel* |
| 6 | **WILLIAMS & CONNOLLY LLP** |
| | 680 Maine Avenue, S.W. |
| 7 | Washington, D.C. 20024 |
| | Tel.: (202) 434-5000 |
| 8 | Fax: (202) 434-5029 |
| | dzinn@wc.com |
| 9 | cmanning@wc.com |
| | jwicht@wc.com |
| 10 | asaharia@wc.com |
| | phynds@wc.com |
| 11 | dkinel@wc.com |

*admitted pro hac vice*

*Attorneys for Movant Seattle Children's Hospital*

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

7

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Civil Rule 5, I hereby certify that on this 25th day of July 2025, the foregoing and the exhibits referenced therein were served via electronic mail on the following individuals, who have consented to electronic service:

**Patrick R. Runkle**
**Ross Goldstein**
**Francisco Unger**
**Jordan C. Campbell**
**Scott Dahlquist**
Consumer Protection Branch
United States Department of Justice
Civil Division
950 Pennsylvania Ave. NW
Washington, DC 20530
Patrick.R.Runkle@usdoj.gov
Ross.Goldstein@usdoj.gov
Francisco.L.Unger@usdoj.gov
Jordan.C.Campbell@usdoj.gov
Scott.B.Dahlquist@usdoj.gov

Dated: July 25, 2025

Steven W. Fogg

REPLY IN SUPPORT
MOT. TO SEAL DOCKET
CASE NO. 2:25-MC-00041-JHC *SEALED*

8

CORR CRONIN LLP
1015 Second Avenue, Fl. 10
Seattle, WA 98104-1001
Telephone: (206) 625-8600