# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

IN RE: SUBPOENA DUCES TECUM NO. 25-1431-016

Case No.: 2:25-MC-00041-JHC

FILED UNDER SEAL

GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO ALTER OR AMEND THE JUDGMENT

Motion Date: October 22, 2025

The Government respectfully submits this reply in support of its motion under Federal Rules of Civil Procedure 59(e) and 60(b) to alter or amend the Court's judgment.

At bottom, SCH's arguments fail to engage with the manifest errors that the Court made in quashing an entire subpoena to a large, regulated healthcare entity that admits engaging in or being a witness to conduct relevant to a statutorily authorized healthcare offense investigation. SCH has not identified any relevant precedent where: (1) an entity engaged in or was a witness to conduct under investigation, SCH Opening Brief at 2; (2) an entity admitted that at least some of the requests in the subpoena relate directly to that conduct, SCH Opp. at 4; (3) the Court found that the Government had "broad authority" to investigate that conduct, Opinion at 18-19; and (4) the Court quashed an entire subpoena. The reason that no one has identified any such case is clear: the law says that the Court must enforce such a subpoena.

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 1
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

SCH's opposition brief continues its trend of using a variety of out-of-context quotations from decades-old administrative subpoena cases in wildly different legal and factual contexts, fundamentally contorting administrative subpoena law to achieve SCH's desired result. As an "expert analysis" in a major legal news publication recently wrote about the similar public decision quashing a similar subpoena to Boston Children's Hospital—a decision that SCH enthusiastically cites and approves of, SCH Opp. at 1—the decision represents a "significant departure" in administrative subpoena law that "contrasts with prior precedent." Law360, "Mass. Ruling May Pave New Avenue to Target Subpoenas" (Oct. 14, 2025) (Ex. A). A "significant departure" in the law that "contrasts with prior precedent," of course, is just another way of saying that the court got the law wrong. This Court similarly erred, and should revise its opinion to conform with longstanding administrative subpoena law and enforce the subpoena.

**1. SCH Itself Put the Evidence into the Record that the Court Said was Missing**

This Court faulted the Government for not explaining what the contours of the investigation are and what the Government hopes to obtain, and also explained in a footnote that it would not consider the factual-type statements in the Government's brief to test the subpoena's validity. Opinion at 14. As the Government accurately explained in its opening brief in support of this motion, however, those holdings were manifestly incorrect because SCH put the Attorney General's and the Assistant Attorney General's detailed descriptions of the investigation and the legal theories behind it into the record itself. The Court did not even need to look at the statements in the Government's brief—although declining to do so was itself error—to figure out what the investigation is about. The record adequately ties documents potentially located at SCH—documents about treatment of minors at its gender clinic with off-label pharmaceuticals—with the legal theories undergirding the investigation.

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 2
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

And yet, SCH still encourages the Court to check common sense at the courthouse door by pretending that the Government somehow failed to connect the dots between, on one hand, SCH's large-scale receipt and provision of powerful off-label pharmaceuticals to kids and, on the other, the Government's investigation of shipments of those same powerful off-label pharmaceuticals for use in kids. SCH Opp. at 3-4. Put another way, if the Government were investigating interstate distribution of a drug intended to be used off-label for an expensive, unusual cardiac procedure and subpoenaed a cardiac clinic that performed that unusual cardiac procedure, there would be no purported "disconnect" between the subpoena and the Government's investigation. SCH Opp. at 10. And yet, due to the controversial subject matter of this investigation, SCH continues to contend that the Government must show a one-to-one match between each potentially responsive document and a criminal legal theory that SCH approves of. That is not the law. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113-14 (9th Cir. 2012) ("The relevance requirement is not especially constraining. . . . The information subpoenaed does not need to be relevant to a crime; in fact, it may be used to dissipate any suspicion of a crime.").

Sensing the manifest error in the Court's apprehension of the record, SCH now implicitly admits that the record *does* contain what the Court was looking for, but faults the Government instead for not *citing to* the documents that SCH extensively cited in support of SCH's own motion. Reply at 10. But the Government did cite to and quote from the documents in question (SCH Exhibits 2 and 5) on page 6 of its motion opposition, when the Government described why the investigation was not improper. The bottom line is that there are easily digestible public documents describing the investigation, SCH and the Government both cited to them, and SCH admitted to engaging in or witnessing conduct that could be relevant to the investigation. This

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 3
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

should have been an easy case in which a proper administrative subpoena was enforced.

## 2. SCH Acknowledges the Legally Unprecedented Nature of the Court's Decision

SCH seems to acknowledge that the Court's decision was "unprecedented," SCH Opp. at 9, but attempts to blame the Government for conducting a purportedly unprecedented investigation. There are numerous reported decisions, however—including at least one under this very statute—where defendants unsuccessfully argue that the administrative subpoena had an improper purpose or that the investigation was being conducted for an improper political purpose. *E.g., United States v. Judicial Watch, Inc.*, 371 F.3d 824, 829 (D.C. Cir. 2024); *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 819 (8th Cir. 2012). However, neither the Government nor (apparently) SCH has been able to come up with a single case where a subpoena was quashed due to statements of the Attorney General with which the subpoena recipients disagree politically—despite at least 75 years of modern administrative subpoena cases and Attorney General statements.

The parties therefore apparently agree that this Court's decision was "unprecedented." SCH also appears to understand just how "unprecedented" some of the Court's applications of the law were, because it denies that the Court said what it said and applied the tests it applied. For example, SCH says that the Court's belief that the Government's burden here is higher than in *Powell* is "not dispositive to the Court's holding," SCH Opp. at 7—even though the Court made that statement at the portion of its decision where it set out whether the Government had met its burden, Opinion at 14. Similarly, SCH states that the Court did not apply a balancing test while quashing the subpoena, SCH Opp. at 7, even though the Court said near the conclusion of its opinion that its "core inquiry" in this matter was to balance SCH's interests against the Government's, Opinion at 23-24. Similarly, SCH faults the Government for not, until its Rule

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 4
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

59(e) motion, citing cases about the presumption of regularity afforded public officials' actions—as if the Court is simply free to ignore that familiar, binding Supreme Court precedent. SCH Opp. at 10.

Moreover, the Government wishes to dispense again with one of SCH's most inapposite legal arguments about off-label prescribing, which it has repeatedly made. One of the statutes at issue in this investigation, 21 U.S.C. § 331(d), makes it a federal crime to ship pharmaceuticals in interstate commerce if, among other things, those pharmaceuticals are intended to be used for a purpose not approved by the Food and Drug Administration. Applied here, Section 331(d) means that if SCH received interstate shipments of GnRH agonists (puberty blockers) which were made or caused to be made with the intent that the drugs be used off-label—which any objective observer would consider an obvious or at least likely possibility in this case—SCH could be at least a witness to a federal crime. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharms., Inc.*, 915 F.3d 1, 5 (1st Cir. 2019). Similarly, if SCH provided patients with misleading written material accompanying those pharmaceuticals, it could have misbranded the drugs while they were "held for sale." 21 U.S.C. § 331(k). SCH's legally correct but largely irrelevant idea that physicians are permitted to engage in off-label prescribing under federal law is a strawman; "off-label prescribing" by "physicians" does not give SCH (which is not a physician) and pharmaceutical companies (which are not physicians either) license to ignore FDA approvals or make false or misleading statements about FDA-regulated pharmaceuticals.

### 3. The Court Should Consider the Hsiao Declaration

The Government recognizes that additional factual material is disfavored in a Rule 59(e) motion, but the situation here is distinguishable for two reasons. First, the Court failed to

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 5
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

consider the original record in its entirety and apparently mistakenly believed the Federal Rules of Evidence apply in this proceeding in determining that it could not consider statements in the Government's brief. Opinion at 14. In such a situation, the Government should be permitted to correct the Court's misapprehension by providing information in a format that the Court expects.

Secondly, while the Court correctly cited law holding that the Government need not show probable cause in an administrative subpoena proceeding, it then required the Government to have provided specific, articulable facts about SCH that amount to at least articulable suspicion. *See Gimbel v. FDIC*, 77 F.3d 593, 602 (2d Cir. 1996) ("articulable and individualized suspicion" not required in administrative subpoena proceeding). Because the Court unexpectedly heightened the standard in a way the Government could not have anticipated, the Court should permit the Government under, *inter alia*, Rule 60(b) to provide additional information here to avoid the "surprise" of the Court's new standard.

//

//

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 6
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

Dated: October 22, 2025.

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation Branch

*/s/ Ross S. Goldstein*
ROSS S. GOLDSTEIN
PATRICK R. RUNKLE
Assistant Directors
SCOTT DAHLQUIST
Trial Attorney

U.S. Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
Tel: (202) 353-4218
ross.goldstein@usdoj.gov

*Attorneys for the United States of America*

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 7
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, I served the foregoing Reply via electronic mail pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure to the following counsel of record, who has consented in writing to electronic service:

Jeffrey B. Coopersmith
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104
jcoopersmith@corrcronin.com

David M. Zinn
Christopher N. Manning
Jennifer G. Wicht
Amy M. Saharia
Patrick C. Hynds
Dana B. Kinel
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
dzinn@wc.com
cmanning@wc.com
jwicht@wc.com
asaharia@wc.com
phynds@wc.com
dkinel@wc.com

Dated this 22nd day of October, 2025.

/s/ Ross S. Goldstein
ROSS S. GOLDSTEIN

# STATEMENT OF COMPLIANCE WITH LOCAL RULE

I hereby certify that this brief contains 1,756 words, excluding the case caption, signature block, and the certificate of service.

/s/ Ross S. Goldstein
ROSS S. GOLDSTEIN

REPLY IN SUPPORT OF MOTION TO
ALTER OR AMEND – p. 8
2:25-MC-00041-JHC
**FILED UNDER SEAL**

United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

OCT 22 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                           DEPUTY

# Exhibit A



Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Mass. Ruling May Pave New Avenue To Target Subpoenas

By **Winston Chan, Christine Bonomo and Nicole Butze** (October 14, 2025, 3:54 PM EDT)

The federal government has historically enjoyed broad authority to use administrative subpoenas, civil investigative demands, and related tools in its civil and administrative investigations and enforcement actions.

As a result, motions to quash or otherwise halt the enforcement of such subpoenas have rarely succeeded, with successful challenges generally limited to circumstances in which it was plain from the breadth of the requests that the government was engaged in an impermissible fishing expedition.

Further, in assessing whether to enforce administrative subpoenas or similar investigative tools, courts have generally declined to consider extrinsic evidence as to the propriety of the government's motives.


Winston Chan

On Sept. 9, however, in In re: Administrative Subpoena No. 25-1431-019, the U.S. District Court for the District of Massachusetts **quashed** a U.S. Department of Justice administrative subpoena directed at a hospital.[1] In reaching its decision, the court relied, in part, on the fact that the subpoena contained overbroad requests for information inconsistent with a proper government purpose.

The court also, however, relied on public statements made by the executive branch suggesting bad faith or improper motive. The outcome in this case thus points to a potential new avenue of targeting subpoena enforcement for practitioners going forward.


Christine Bonomo

## Historical Background on Investigative Subpoenas

Historically, federal agencies have enjoyed broad authority to issue administrative subpoenas. And while such subpoenas have been subject to judicial review when challenged, the burden on the government to defend such subpoenas has been minimal. As the U.S. Supreme Court articulated in its 1950 decision in U.S. v. Morton Salt, federal agencies "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."[2]


Nicole Butze

In general, courts have enforced administrative subpoenas if the government agency proves that (1) the subpoena is issued for a congressionally authorized purpose, (2) the information sought is relevant to the authorized purpose, (3) the information sought is

adequately described, and (4) proper procedures have been employed in issuing the subpoena.[3]

As the U.S. Court of Appeals for the First Circuit observed in its 1989 decision in U.S. v. Comley, affidavits of government officials have generally been accepted as sufficient to make out a prima facie showing that these requirements are satisfied.[4]

With respect to the congressionally authorized or proper purpose requirement in particular, courts have traditionally applied a highly deferential standard.[5] Historically, courts generally held that the validity of a subpoena is judged against the purposes stated in the authorizing statute or resolution, without probing into extraneous evidence.[6] Even where an improper purpose existed, courts have allowed enforcement so long as at least one legitimate purpose supported the subpoena.[7]

As the Supreme Court observed in Morton Salt, it is certainly possible that a "governmental investigation into corporate matters may be such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power."[8] But subpoenas are generally enforceable, the Supreme Court continued, so long as they are within the authority of the agency and any requests for information are reasonably relevant to the purpose of the investigation.[9]

In light of the relatively minimal showing required by the government, cases in which courts have quashed subpoenas or declined to enforce portions thereof have been extremely rare. These cases have tended to involve circumstances in which the requests for information have been so broad on their face as to reflect an impermissible fishing expedition for any evidence of wrongdoing.[10] Challengers thus faced a high bar to invalidate government investigative tools.

**Changing Legal Landscape to Investigative Subpoena Enforcement**

The decision in In re: Administrative Subpoena No. 25-1431-019, however, represents a significant departure from courts' traditionally deferential approach to subpoena enforcement.[11]

There, the DOJ had served The Children's Hospital Corp., doing business as Boston Children's Hospital, on June 11 as part of a nationwide set of subpoenas seeking information about gender-affirming care, or GAC. The DOJ alleged that it was investigating unlawful off-label promotion under the Food, Drug and Cosmetic Act and potential "false claims that may have been submitted to federal healthcare programs."

The subpoena contained 15 requests, including "any and all information regarding BCH's personnel, documents, and communications regarding the use of billing codes in connection with GAC for minor patients" and "patients' social security numbers and home addresses." [12]

The district court noted that Massachusetts law recognizes access to GAC as a protected right, and recounted administration directives and statements aiming to end GAC nationwide, such as executive orders and attorney general and DOJ Civil Division memoranda.

The court granted BCH's motion to quash the administrative subpoena, concluding that the government failed to carry its burden to show a proper purpose beyond conclusory references to a healthcare fraud investigation. The court's analysis cited several factors to support its ruling.

First, the court observed that the DOJ offered no "affidavits or other evidence to show [a] proper purpose." The government's only support for its contention that it was engaging in a legitimate investigation — pointing to an attorney general memo directing the DOJ's Civil Division to undertake appropriate investigations[13] — was insufficient.

Second, the court recounted numerous public statements made by the Trump administration, including in executive orders and DOJ memoranda, demonstrating that the administrative subpoena was likely issued to carry out the administration's expressed goal of ending GAC, rather than as a part of a limited healthcare fraud inquiry.

Third, the court observed that the subpoena's requests were overly broad for the government's stated purpose of a healthcare fraud investigation, seeking an array of documents and information that had no connection to fraudulent billing practices or off-label promotion. For example, the subpoena requested "the personnel files of nearly all 2,000 individuals who work for BCH in any capacity."

The court further pointed to the fact that GAC is protected under the Massachusetts Constitution, so it was highly unlikely that BCH was attempting to "evade state bans on gender dysphoria treatments by knowingly submitting claims to Medicaid with false diagnosis codes" because there is a diagnosis billing code for GAC in Massachusetts.

This reasoning represents a significant departure from the deferential standard courts have historically applied in several ways. Perhaps most significantly, the court considered public statements made by administration and agency officials to conclude that the stated purpose of the subpoena was pretextual. The court's reliance on such evidence contrasts with prior precedent in this area, in which courts evaluated subpoenas solely against the statutory purpose.

Secondly, the court rejected the idea that a mixed-motive subpoena could be enforced. Instead, it required the government to show that "the information sought by the subpoena is limited to these potential healthcare offenses, as opposed to the Government's stated goal of ending GAC."[14]

Thirdly, unlike in Morton Salt — where the court stated that sweeping investigations were upheld as long as they were tethered to a legal inquiry — the Massachusetts court invalidated the subpoena as overbroad because the court believed the requests were insufficiently connected to the articulated purpose.

Notably, on Oct. 7, the DOJ **filed a motion** to alter or amend with the district court, asking it to reconsider its decision and asserting that the court made several errors in its ruling. Among other arguments, the government pointed to historical precedent, arguing that so long as it had statutory authority to investigate the offenses or violations under investigation, the subpoena's purpose was proper — suggesting, though not expressly arguing, that the court's reliance on extrinsic evidence was improper.

The court has not yet issued a ruling on the motion.

### The Evolving Legal Framework for Investigative Subpoena Enforcement in the Digital Age

For much of the 20th century, courts generally refused to look beyond the four corners of the subpoena when assessing its validity. Even if challengers alleged improper political or retaliatory motives, enforcement was generally permitted so long as at least one proper purpose existed and the subpoena's requests did not suggest the government was engaged in an impermissible fishing expedition.

This deferential approach may have been due, in part, to the fact that extrinsic evidence — such as agency memoranda or administration commentary — was rarely available to litigants or courts.

The modern digital era, however, may be fundamentally reshaping this landscape. Public statements by administrations are now continuously recorded, archived and disseminated through online platforms, press releases and social media. Unlike earlier decades, where official speeches and policy documents were more limited and often inaccessible, courts and litigants now have a vast trove of extraneous evidence to draw upon in challenging the stated rationale of an investigative subpoena.

Internal memoranda are also more readily obtained through Freedom of Information Act requests, leaks and watchdog litigation, further expanding the evidentiary record available to litigants and courts.

Increased access to government officials' or agency heads' commentary on investigative priorities and other issues — through online forums in particular — may begin to influence case law, as the court's decision In re: Administrative Subpoena No. 25-1431-019 suggests.

Looking ahead, the implications for practitioners could be significant — especially if the Massachusetts district court's order stands. Agencies must now recognize that public pronouncements by their top agency officials can directly affect the enforceability of investigative subpoenas.

There is also likely to be an uptick in challenges to administrative subpoenas or civil investigative demands. These challenges may increasingly rely on public statements by agency officials to support an argument that the government's demands are not just overbroad fishing expeditions, but also motivated by an improper purpose or bad faith.

Indeed, with near constant access to administration rhetoric, litigants may be able to more easily to frame investigative tools as politically motivated.

---

*Winston Chan is a partner, and co-chair of the global white collar defense and investigations practice group and the False Claims Act/qui tam defense practice group, at Gibson Dunn & Crutcher LLP. He previously served as an assistant U.S. attorney in the Eastern District of New York.*

*Christine Bonomo is an associate at Gibson Dunn. She previously served at the DOJ, most recently as the acting deputy chief for counterintelligence of the Counterintelligence and Export Control Section.*

*Nicole Butze is an associate at Gibson Dunn.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of their employer, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] In Re: Administrative Subpoena No. 25-1431-019 ⬤, Case No. 1:25-mc-91324-MJJ (D. Mass 2025).

[2] United States v. Morton Salt Co. 🌐, 338 U.S. 632, 642-43 (1950).

[3] U.S. v. Sturn, Ruger & Co. 🌐, 84 F.3d 1, 4 (1st Cir. 1996) (citing United States v. Morton Salt Co. 🌐, 338 U.S. 632, 652-53 (1950), Oklahoma Press Pub. Co. v. Walling 🌐, 327 U.S. 186, 208 (1946); United States v. Comley 🌐, 890 F.2d 539 (1st Cir. 1989)); see also EEOC v. Tempel Steel Co. 🌐, 814 F.2d 482, 485 (7th Cir. 1987).

[4] United States v. Comley 🌐, 890 F.2d 539, 541 (1st Cir. 1989).

[5] See F.T.C. v. Carter 🌐, 636 F.2d 781, 789 (D.C. Cir. 1980); Donaldson v. United States 🌐, 400 U.S. 517, 534-35 (1971), rev'd on other grounds, Polselli v. Internal Revenue Service 🌐, 598 U.S. 432 (2023); Morton Salt, 338 U.S. 632 (1950); Trade Commission v. American Tobacco Co. 🌐, 264 U.S. 298 (1924).

[6] F.T.C. v. Carter 🌐, 636 F.2d 781, 789 (D.C. Cir. 1980).

[7] Id. (citing Donaldson v. United States 🌐, 400 U.S. 517, 534-35 (1971), rev'd on other grounds, Polselli v. Internal Revenue Service 🌐, 598 U.S. 432 (2023).

[8] Morton Salt, 338 U.S. at 652 (citing Federal Trade Commission v. American Tobacco Co. 🌐, 264 U.S. 298 (1924).

[9] Id. at 652.

[10] See e.g. In re: Sealed Case (Administrative Subpoena) 🌐, 42 F.3d 1412 (D.C. Cir. 1994) (declining to enforce agency subpoenas for the general purpose of uncovering "unknown" "wrongdoing" as an impermissible "fishing expedition"); see also United States v. Theodore 🌐, 479 F.2d 749 (4th Cir. 1973) (reversing district court order enforcing an IRS summons because it was "unprecedented in its breadth," seeking all returns of the recipient's clients for several years and all records, memos, and workpapers related to those returns"; and observing that that the "Government cannot go on a 'fishing expedition' through records").

[11] In Re: Administrative Subpoena No. 25-1431-019 🌐, Case No. 1:25-mc-91324-MJJ (D. Mass 2025).

[12] Id. at 4.

[13] On April 22, 2025, Attorney General Pamela Bondi issued a memorandum, titled "Preventing the Mutilation of American Children," directing the Civil Division of the DOJ "to undertake appropriate investigations of any violations of the [FDCA] by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drugs used to facilitate a child's so-called 'gender transition.'" Memorandum from Attorney General, Preventing the Mutilation of American Children, Office of the Attorney General, at 3-4 (April 22, 2025), https://tinyurl.com/2b9kaja7.

[14] Id. at 11.

All Content © 2003-2025, Portfolio Media, Inc.