# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: 2025 UPMC Subpoena ) | |
| ) | 2:25-mc-01069-CB |
| ) | |
| ) | Chief Judge Cathy Bissoon |
| ) | |

## ORDER

Movants are patients and former patients who received gender-affirming care from UPMC before the age of majority, and their parents ("the patients"). They resist the government's efforts to compel the disclosure of their personal identifiers and information, as part of a sweeping agenda to eliminate "gender-affirming care." The Attorney General characterizes such treatment as the "barbaric practice of surgically and chemically maiming and sterilizing children," one that "exploit[s] and mutilate[s] our [Country's] children." MEM. FROM OFC. OF THE UNITED STATES A.G., https://www.justice.gov/ag/media/1402396/dl.

This Court does not rule on a blank slate. In a similar case in the Eastern District of Pennsylvania,[1] District Judge Mark A. Kearney joined District Judge Jamal N. Whitehead in the Western District of Washington (2:25-mc-00042-JNW); District Judge John H. Chun of the same court; District Judge Myong J. Joun in the District of Massachusetts (1:25-mc-91324-MJJ); and District Judge Julie Rebecca Rubin in the District of Maryland (1:25-cv-03780-JRR), in granting relief. Judge Kearney authored a 75-page written opinion, applying the law of this Circuit to systematically dismantle *all* of the government's arguments that healthcare providers

---

[1] In re Subpoena No. 25-1431-014, Misc. No. 2:25-mc-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025).

should be compelled to reveals minor patients' personal information, including their names, addresses, social security numbers and complete medical and psychological records.

Judge Kearney's ruling is not an outlier. To the undersigned's knowledge, no reported federal decision has ruled in the government's favor.

In the face of its mounting losses, the government recently filed here a "Motion to Allow Supplemental Briefing." Doc. 47. While the Motion's title technically is accurate, it also "buries the lede." The proposed additional briefing is to address the government's concession that it will accept "anonymized" medical records in full satisfaction of the challenged requests. While the Court appreciates the concession, it nevertheless will grant Plaintiffs' request for relief.

Judge Kearney's opinion is comprehensive, well-reasoned and highly persuasive. It applies binding law, and does not beg improvement. Judge Kearney's analyses are incorporated by reference, and the undersigned offers additional comments for the limited purposes of eliminating putative distinctions and emphasizing some points.

Although Judge Kearney also has a "patients' case," *see* 2:25-mc-00054-MAK, the merits ruling was entered in an action by the provider-hospital. Judge Kearney was correct in determining that the hospital has standing, and so too do the patients. The government has argued that the patients lack standing, and are untimely, because they were not the subpoena-recipients. The timeliness argument is disingenuous, given the patients' initial lack of awareness of, and uncertainty regarding, the subpoena. The government's standing arguments fail under the "zone of interests" test. Am. Coll. of Obstetricians & Gynecologists, Pa. Sec. v. Thornburgh, 737 F.2d 283, 290 n.6 & 303 n.21 (3d Cir. 1984) (both patient and providers had standing) (all citations to quoted and other sources, here and hereafter, omitted).

Judge Kearney also was correct that the United States's investigation tramples the Commonwealth of Pennsylvania's power to police, and legislate, matters of medical care. In re Subpoena (E.D. Pa.), 2025 WL 3252648 at *2. Gender-affirming medical care is legal in the Commonwealth. *Id.* The government's *diktat*, moreover, flies in the face of the Supreme Court's decision in Skrmetti, wherein the majority repeatedly emphasized the reservation of these matters to the States. *Id.*, 605 U.S. 495, 524 (U.S. 2025) (Roberts, C.J., majority opinion) ("[w]e afford States wide discretion to pass legislation in areas where there is medical and scientific uncertainty"); *id.* at 532, 540 (Thomas, J., concurring) (the States must have the "ability to enact high-stakes medical policies, in which compassion for the child points in both directions"; and, "[i]n areas with this much medical and scientific uncertainty," states must have "wide discretion"); *id.* at 550 (Barrett, J., and Thomas, J., concurring) (the Constitution "allows the States wide latitude, and [it] presumes that even improvident decisions will eventually be rectified by the democratic processes"); *and id.* at 563, 577-78 (Alito, J., concurring) (applying the rational-basis standard, and concluding that the Tennessee legislature's stated purpose – to "protect the health and welfare of minors" from medical procedures that are "experimental in nature" – satisfied it). The government cannot pick and choose the aspects of Skrmetti to honor, and which to ignore.

Finally, this Court joins the others in finding that the government's demand for deeply private and personal patient information carries more than a whiff of ill-intent. This is apparent from its rhetoric. The Supreme Court's approach in Skrmetti was measured, recognizing the "sincer[ity]" of "the voices in these debates," regarding matters of such "profound" implication. *Id.* at 525. The executive branch, less so.

Discussions of gender-affirming care (the majority of which has nothing to do with surgery) have been painted with such incendiary characterizations as:

- "a radical ideological agenda";
- an "infect[ion visited upon] an entire generation";
- the work of "politically captured profiteers";
- "barbaric practice[s]" that "maim[e] and steriliz[e] children";
- resulting in "permanent[] disfigure[ment and] scarr[ing]";
- the "fraud and exploitation of parents and children";
- a "prey[ing] on vulnerable children and their parents";
- and, of course, "genital mutilation."

DOJ public website, https://www.justice.gov/ag/media/1402396/dl.

While the Court is aware of the differing roles and influences of each branch of government, the executive's public statements can be described as provocative, and unabashedly so. DOJ press releases are titled to suggest a reasonable, dignified discussion—but eventually, they say the "quiet parts" out loud. *See* DOJ press release dated Jul. 21, 2025 (noting Skrmetti's holding that the Tennessee law "respond[ed] directly to the uncertainty and ongoing debate about the risks and benefits" of GAC, but also describing such treatment as "horrific," "experimental," "barbaric" and "mutilat[ion]"); press release dated Jul. 9, 2025 (announcing the DOJ's subpoenaing of medical professionals "involved in performing transgender medical procedures on children," who, according to the AG, "mutilated [them] in the service of a warped ideology").

It is hard to imagine how such inflammatory language may advance the public discourse between reasonable people of good faith. Placing that to one side, Judge Kearney was correct that the legitimacy of the administrative-subpoena mechanism hinges on "the good faith of the

4

particular investigation." In re Subpoena at *11.  The government's rhetoric does not cast a favorable light.[2]

Finally, the greatest "tell," from a legal perspective, was the government's having sought personal identifiers in the face of Westinghouse.  There, the Court of Appeals for the Third Circuit recognized OSHA regulators' need for longitudinal medical case-files to assess whether employees suffered adverse health effects from their exposure to dangerous chemicals. *Id.*, 638 F.2d 570 (1980).  A seemingly obvious conflict of interest permeated the case—the employer, not the employees, resisted disclosure, and putative liability beckoned.  But the Circuit Court recognized a sensible reason for allowing the production of the longitudinal data sets, subject to carefully-drawn protective measures.

Assuming the United States has *any* legitimate need for the information sought – *and* that it *likewise* requires longitudinal data – the solution is, and always has been, as plain as the nose on one's face.  *Longitudinality may be preserved by anonymization of patients.*

---

[2] In its public-facing statements, the DOJ appears determined to project two images:  it, the great protector of culture and children, *see* discussions *supra*; and it, the champion of the faithful-oppressed (mostly, Christians, although sometimes with the slightest pinch of "Judeo-"). *See, e.g.*, DOJ press release of Apr. 22, 2025 (celebrating "the inaugural meeting of the Task Force to Eradicate Anti-Christian Bias in the federal government," where the AG "was joined by peaceful Christian Americans who were unfairly targeted by the [prior a]dministration"; discussions included "efforts to push radical and anti-Christian gender ideology on kids in classrooms, foster care, sports, and healthcare").  These perceived imperatives have formed an unholy alliance, from the perspective of transgender people, who find themselves in an increasingly inhospitable environment.  Justice Alito has acknowledged "the discrimination" and "disadvantage[]" facing the transgender community today.  Skrmetti at 577.  It also is of great concern, for those who value the separation of church and state, to see the Department of Justice cavalierly blurring the lines.  *See also, e.g.*, press releases dated Sept. 9, and Sept. 30, 2025 (second and third hearings regarding "threats to religious liberty in education," which – of course – included matters of gender transition).

The solution was not hard to imagine, and the government's string of losses appears to have finally allowed its creative juices to flow. That or its previous demands were less legitimate than has been suggested.[3]

Plaintiffs' Motion to Quash (**Doc. 1**) is **GRANTED**. It is limited to the same requests – numbers 11, 12 and 13 – as in the Eastern District. This Court joins Judge Kearney in declining to rule on Plaintiffs' catchall objection. *Compare* Doc. 1-1, here, *with* In re Subpoena, 2025 WL 3252648 at *8-9. Finally, the Court will entertain cross-briefing on the matter of potential anonymized productions, as envisioned in the government's Motion (**Doc. 47**) to supplement, which is **GRANTED.** The parties' deadline is **January 16, 2026**, and UPMC is granted leave to file a brief. All parties submitting briefing shall include signature-ready proposed orders, whether stipulated or opposed.

IT IS SO ORDERED.

December 24, 2025                                    s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     Chief United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[3] The Court is uncertain whether the general public is aware of how broad the government's campaign is against transgender people. One media report has described it as a campaign of "shock and awe." *See* https://www.advocate.com/news/transgender-options-trump-executive-orders. In January 2025, alone, executive orders rescinded protections for LGBTQ+ people in federal employment and education; reinstated moves to ban transgender people from serving in the military; barred federal funds from supporting any institution or initiative that recognizes gender fluidity; and federal agencies have purged references to gender identity from government websites and documents. *Id.* Much more has been done since then, and more is sure to follow. The Court does not take judicial notice of the media source, it is offered only by way of background.