UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE SUBPOENA DUCES TECUM NO. 25-1431-016

CASE NO. 2:25-mc-00041-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on the Department of Justice's (DOJ) Motion to Alter or Amend the Judgment.  *See* Dkt. # 29.  The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law.  Being fully advised, for the reasons below, the Court DENIES the motion. [1]

---

[1] The facts and background discussed in the Court's original order (the Order) are incorporated here.  *See* Dkt. # 25 at 1-5.

ORDER - 1

## II

### DISCUSSION

A.    Procedural Standards

The DOJ brings this motion under Federal Rules of Civil Procedure 59(e) and 60(b)(1) and (6).

1.    Rule 59(e)

Under Rule 59(e), a party may move to alter or amend a judgment no later than 28 days after the entry of the judgment.  Fed. R. Civ. P 59(e).  This rule provides for an "extraordinary remedy" that should be "used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James William Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

> In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon,* 197 F.3d 1253, 1255 n.1 (9th Cir.1999) (en banc) (per curiam)); *see also McDowell,* 197 F.3d at 1255 n.1 (holding that because the rule does not list specific grounds "the district court enjoys considerable discretion").  The Ninth Circuit has cautioned that motions under Rule 59(e) "should not be granted, absent highly unusual circumstances," and only when "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona*, 229 F.3d at 890 (quoting *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999)).

ORDER - 2

2.    Rule 60(b)

Rule 60(b) provides various grounds for relief from a final judgment; under Rule 60(b)(1) and (6), the Court may "relieve a party . . . from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect" or "for any other reason that justifies relief."  Under Rule 60(b)(1) "[t]he district court has discretion to correct a judgment for mistake or inadvertence, either on the part of counsel or the court itself."  *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004).  "[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts."  *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (quoting *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009)).  A "movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment."  *Hall*, 861 F.3d at 987 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)) (cleaned up).

B.    Analysis

The DOJ contends that  "manifest errors" occurred when the Court (1) "determin[ed] that the Government is not conducting an investigation of federal health care offenses at SCH"; (2) "shift[ed] and heighten[ed] the burden of proof on the Government" and "fail[ed] to provide the Government an opportunity to make a showing" after the order; and (3) "discount[ed] the Attorney General's stated purpose in conducting a lawful investigation."  Dkt. # 29 at 1-2.  For the reasons discussed below, these contentions fail.

The DOJ disagrees with the Order but does not demonstrate manifest error.  Further, the motion is based on arguments never made before to the Court and a new Declaration with statements not previously presented to the Court—but all of which were available to the DOJ at

ORDER - 3

the time the Order was filed.[2] *See* Dkt. # 30; *see generally* Dkt. ## 29, 32. For this reason alone, the motion should be denied. *Kona*, 229 F.3d at 890 ("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (emphasis in original); *see also United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (cleaned up) (quoting *Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 856 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994)).[3]

By contrast, Seattle Children's has submitted seven recent decisions from other courts considering virtually identical subpoenas; those decisions reach similar conclusions as the Order and find, at least in part, the subpoenas to be unenforceable. Dkt. ## 34, 36, 37, 39, 40, 41; *see In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229 (D. Mass. 2025), *appeal pending*, No. 26-1093; *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295 (W.D. Wash. 2025),

---

[2] The DOJ also provided the Court with notice of *Trump v. Orr*, __ U.S. __, 146 S. Ct. 44, 223 L. Ed. 2d 180 (2025). There, the Supreme Court granted the Government a stay of a preliminary injunction that had prevented it from requiring passports to display an individual's biological sex at birth. *Id.* at 46. In the underlying proceedings, the plaintiffs had raised questions under the Equal Protection Clause and the Administrative Procedure Act—none of which are at issue here. *Id.* The ruling does not discuss gender affirming care, subpoenas, or a federal health care offense investigation under 18 U.S.C. § 3486(a)(1)(A)(i)(I). *See generally id.* The only connection to this case, as the DOJ now puts it, is to "transgender topics." Dkt. # 35. Even if *Trump v. Orr* could be read as a sweeping approval of the Government's policies on "transgender topics," as later explained, the Order makes no finding about the Government's policy decisions, it simply finds that the Government acted outside the scope of authority granted by Congress. Dkt. # 25 at 5-24.

[3] The DOJ does not raise Rule 60(b)(2), which allows for an amended judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." *See Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) ("The Rule 60(b)(6) 'catch-all' provision . . . applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60."); s*ee also Latshaw v. Trainer Wortham & Co. Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006) ("Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret").

ORDER - 4

*appeal pending*, No. 25-7384 (argued and submitted March 19, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555 (E.D. Pa. 2025); *In re 2025 UPMC Subpoena*, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025), *judgment entered*, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026); *In re Children's Nat'l Hosp.*, 2026 WL 160792 (D. Md. Jan. 21, 2026); Report & Recommendation, *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, 2026 WL 33398 (D. Colo. Jan. 5, 2026).[4]  To date, no decision identified by either party, or that the Court has found, rules in the DOJ's favor.  Still, the Court addresses each of the DOJ's arguments.

        1.        Health care offense investigation

The DOJ does not dispute that the Court must ask "'whether Congress has granted the authority to investigate,'" and that here, where subpoenas were issued under 18 U.S.C. § 3486(a)(1)(A)(i)(I), that authority turns on whether the subpoenas were issued related to an "investigation of a Federal health care offense."[5]  *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012); *see* Dkt. # 25 at 5-7, 9-13 (discussing the nuances of this standard).  Instead, the DOJ says, "The Court made manifest factual errors in determining that the Attorney General is not conducting a federal health care offense investigation" because the ruling "conflict[s] with the evidence and fail[s] to consider contrary information in the record, and thus there is "obvious error" in need of correction.[6]  Dkt. # 29 at 2.

---

[4] Many of these decisions have either been appealed or the DOJ has made further motions before the district court, and the DOJ has objected to the R&R in *In re Dep't of Just. Admin. Subpoena No. 25-1431-030.  See generally In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, Docket.

[5] The DOJ did contest this in the original filings, but not in the instant motion.  *See* Dkt. # 18 at 4; *see generally* Dkt. # 29.

[6] The DOJ also says the Court committed error by considering "only" the Hsiao declaration in determining that the Government had not issued the subpoenas to investigate federal health care offenses. Dkt. # 29 at 2, 4.  This is plainly incorrect.  The DOJ takes one word out of a sentence cited eight pages before the challenged legal conclusion and under a different subheading and extrapolates that the Court considered only the Hsiao declaration for the entire order.  *See* Dkt. # 29 at 2 (citing Dkt. # 25 at 14 l.13, 22).  The location of this sentence makes clear that that was not the case—which the DOJ seems to

ORDER - 5

The DOJ apparently misunderstands the Court's Order.  It is correct that there is no "meaningful dispute" that the Attorney General might have ordered or might be conducting a federal health care offense investigation.  Dkt. # 29 at 3.  But the Order does not conclude that the Attorney General is not conducting a federal health care offense investigation generally; it makes a finding that "the DOJ *did not issue its subpoena to investigate* a federal healthcare offense."[7]  Dkt. # 25 at 22 (emphasis added); *see also id.* at 14 ("The DOJ does not make a prima facie showing that its subpoena is authorized by Congress because it does not establish that it has a realistic expectation of discovering something relevant to the investigation of a federal health care offense."); *see also In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 576 ("The authority to issue administrative subpoenas is not inherent in the Executive Branch—it is a delegation from Congress. . . And Congress [in Section 3486] ties the authority directly to relevance—the Department of Justice may not use a federal court subpoena to demand specific records if they are not relevant to a federal health care offense.").

The DOJ presents a list of background information that it says supports a conclusion that a federal health care offense investigation was ongoing, but none of it speaks to whether these

concede, as the next paragraph of its brief admits, "The Court initially laid out several pieces of information indicating that the Attorney General has personally directed a lawful investigation into federal health care offenses."  Dkt. # 29 at 3; *see also id.* at 4-5.  But even if it is unclear, footnote 4 of the original Order states that the DOJ had not provided legal authority suggesting that the Court could consider justifications made in a brief rather than evidence presented to make a prima facie showing.  Dkt. # 25 at 14 & n.4.  Still, the Order explains that the Court would consider the DOJ's other justifications presented in its briefing, along with Seattle Children's evidence, later in the Order after the burden shifted to Seattle Children's.  *Id.*  The Government does not consider this alternative finding.

[7] In reviewing the Order, the Court has found one sentence in a footnote that might have rendered this finding not entirely clear.  *See* Dkt. # 25 at 23 n.8 (first sentence).  The Court apologizes for any misunderstanding this sentence might have caused but believes that, regardless, the Order, including the two sentences immediately preceding the footnote, made the Court's findings clear.  To be sure, the Court now restates the Order's conclusion: "In sum, the DOJ has not established a prima facie case that its subpoena was issued with a realistic expectation that it would uncover information relevant to a federal healthcare offense.  And even if the DOJ's sparse evidence establishes its prima facie case, Seattle Children's has shown that the subpoena cannot be enforced because it was not issued to investigate a federal healthcare offense."  *Id.* at 23.

ORDER - 6

subpoenas presented to Seattle Children's were in furtherance of that investigation. Dkt. # 29 at 4-5; *See In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 ("The Government's attestation of its general awareness that (or how) certain drugs are applied to patient care across the national healthcare spectrum is 'too indefinite' to demand the Hospital produce the medical records described in the Subpoena.") (citing *Morton Salt Co.*, 338 U.S. at 652-53); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237 ("the Government simply point[ing]" to statements that direct the DOJ "'to undertake appropriate investigations'" to show that "the subpoena must have been issued for a proper purpose" would preclude judicial review and is based in "no logic at all").

And in fact, Seattle Children's presented evidence showing that the subpoenas were likely issued instead for an improper, non-statutorily authorized endeavor. *See* Dkt. # 25 at 19-23. In concluding the DOJ did not issue its subpoena to investigate a federal healthcare offense, the Order considers that it did not identify any conduct specific to Seattle Children's nor did it connect the use of puberty blockers and cross-sex hormones to any federal health care offense; instead, the Government's public statements repeatedly indicated that the "intended effect" of these investigation was not to stop federal health care offenses but to "prevent[] children from being maimed and sterilized by adults perpetuating a radical, false claim that they can somehow change a child's sex." *Id.* (quoting Dkt. # 2-1 at 55 (White House press release related to virtually similar subpoenas)).

The Court was not unique in its finding. As the court in *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229 found:

> Numerous statements by the Administration, executive orders, and memorandums, detail the Administration's goal of ending [gender affirming care]. While portions of these statements also refer to suspicions of improper billing practices and unlawful off-label promotion, the Government has not provided any support that the information sought by the subpoena is limited to these potential healthcare

ORDER - 7

offenses, as opposed to the Government's stated goal of ending [gender affirming care]. To be clear, the Government cannot broadly make inquiry into the provision of [gender affirming care] generally—any such inquiry must be limited to the healthcare fraud that is authorized by the statute: fraudulent billing codes and unlawful off-label promotion. That is not the case here.

The requests seek an astonishingly broad array of documents and information that are virtually unlimited in scope. . . . The Government seeks all this while not offering an iota of suspicion that [Boston Children's Hospital] is actually engaging in fraudulent billing practices or off-label promotion in the first instance. The Government may be correct that it need not provide probable cause for its investigations, but it cannot use its subpoena power to go on a fishing expedition.

*Id.* at 237-38; *see also QueerDoc*, 807 F. Supp. 3d at 1302 ("While the government need not justify its decision to open an investigation, once a recipient makes an adequate showing of bad faith or improper purpose, courts may examine whether the agency is 'pursuing the authorized purposes in good faith.'") (cleaned up).

So too here, as the Order states, the Government presented no evidence that it was investigating any federal health care offense at Seattle Children's, such as fraud or unlawful off-label promotion. *See* Dkt. # 25 at 19-23. The Order determines that the limited explanation the DOJ provided for the subpoenas did not make a prima facie case, but even if it were sufficient, Seattle Children's proved improper purpose.

2.    Burden

The DOJ next makes multiple assertions about its burden, arguing that (a) the Court shifted the burden to the Government; (b) the Court heightened the burden on it; and (c) the Court failed to provide it an opportunity to meet the Order's "newly announced" standard. Dkt. # 29 at 5-6. The DOJ lists multiple standards that it claims the Order improperly applies—burden shifts, probable cause, a balancing test, preponderance standard, and so on. *Id.* at 5-11. The Court addresses first the burden applied to the DOJ and then that applied to Seattle Children's.

ORDER - 8

a.        The DOJ's burden

The Order plainly does not shift or heighten the DOJ's burden.  Based on a plethora of higher court authority, the Court found that the DOJ must establish a prima facie case.  Dkt. # 25 at 14 ("The DOJ's 'burden, while not great, is also not non-existent.'") (quoting *United States v. Goldman*, 637 F.2d 664, 667); *see also id.* at 6 (citing *F.D.I.C. v. Garner*, 126 F.3d 1138, 1142-43 (9th Cir. 1997) and *United States v. Tan*, 16 F.4th 1346, 1352 (9th Cir. 2021).  The DOJ takes issue with the Court's reading of cases as they relate to the Court's findings, but it does not point to any legal authority providing that the DOJ did not need to establish a prima facie case.  Dkt. # 29 at 8-9; *see generally id.* at 5-11.  Thus, requiring the DOJ to establish a prima facie case is not a burden shift, but just applying the law.[8]  *See Tan*, 16 F.4th at 1352 ("To obtain a court order enforcing an administrative summons, the government need only make a prima facie case for enforcement"); *Goldman*, 637 F.2d at 667 ("Because the Government never met its burden, no burden ever shifted"); *Garner*, 126 F.3d at 1143 (describing the Government's showing that "is sufficient to establish a prima facie showing"); *see also In re Children's Nat'l Hosp.*, 2026 WL 160792, at *6 ("the Government's administrative subpoena power is broad, but it is not without limit").

The Order also does not heighten the DOJ's burden in considering its prima facie case.  The Order finds that the DOJ had not established a prima facie case because the DOJ's only showing was the Hsiao declaration, which contained only a conclusory statement that the

[8] The DOJ later says that "[b]ecause this was a procedurally proper subpoena," Seattle Children's "motion to quash should have been denied"; this seems to imply that the DOJ believed that it did not need to make a showing beyond meeting procedural requirements.  *See* Dkt. # 29 at 7.  For that statement, the DOJ relies on a footnote from *E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 851 n.3 (9th Cir. 2009), in which the court quotes a First Circuit decision to explain what may be "plainly lacking" administrative authority.  But this is clearly an example, as the court there introduced the parenthetical with a "[s]ee, e.g.," and this single quote does not contradict or alter Ninth Circuit precedent, from both before and after *Fed. Exp. Corp*, requiring the DOJ to make a prima facie showing.

ORDER - 9

subpoenas were "lawfully issued and authorized" "in connection with a valid investigation." Dkt. # 25 at 14-15. Hsiao did not even claim to personally know about an investigation or anything else in the declaration. *See* Dkt. # 18-1. Nor does the declaration include other minimal requirements, such as a showing "that the inquiry may be relevant to the purpose" of the investigation and "that the information sought is not already within [the Government's] possession." *Tan*, 16 F.4th at 1353. The Order's conclusion that the DOJ had not met its prima facie burden is not a unique finding, let alone "manifest error" demanding amendment of the Order. *See In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237 ("I find that, while the Government has made a prima facie showing that it is authorized by statute to issue a subpoena if it relates to a federal healthcare offense, significantly, the Government has failed to show proper purpose."); R&R, *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *3 ("The Court joins the chorus. Notwithstanding the government's relatively light burden, the government's meager attempt to carry it falls short."); *In re Children's Nat'l Hosp.,* 2026 WL 160792, at *8 ("Nothing in the Government's papers provides even a bare foundation on which to issue the Subpoena requiring adolescent patient medical records.").

Nor does the Order apply a probable cause standard to make this finding. Dkt. # 25 at 10 ("Agencies need not show probable cause to justify a subpoena"). The DOJ seems to ignore what is explicitly stated in the Order, to instead insist a probable cause standard must have been applied for the Court to reach its conclusion.[9] Dkt. # 29 at 9-10. But this is not so. To illustrate, in *In re Children's Nat'l Hosp.*, 2026 WL 160792, a Maryland court applied the Fourth Circuit's

___

[9] To support this argument, the DOJ again cites sections of the Order unrelated to the point it tries to make. The DOJ takes issue with the Court inquiring into the DOJ's "explanation," but this inquiry occurred *after* the burden had shifted to Seattle Children's and in the context of comparing the DOJ's threadbare showing with Seattle Children's much more rigorous showing. *See* Dkt. # 25 at 20-21. In fact, just before the quotes the DOJ now uses, the Court said, "To be sure, a subpoena can be warranted based on some speculation." *Id.* at 20.

ORDER - 10

standard to consider a motion to quash an administrative subpoena, which was also related to the DOJ's current actions. That Circuit's standard provides that "a subpoena need not be supported by probable cause." *Id.*, at * 7(quoting *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000). But still, the Maryland court determined the subpoenas were issued for an improper purpose because, just as here:

> The Government fails to place before the court any information, record, or evidence supporting or pertaining to investigation of the Hospital for any "health care offense." There is no articulated basis to suspect the Hospital of violations of the FDCA or the False Claims Act; and surely none that would call for disclosure of Movant's records. The Government offers no affidavit (or complaint or whistleblower statement) attesting to grounds for an investigation of the Hospital for FDCA or False Claims Act violation. Instead, the Government offers the Declaration of Lisa Hsiao, Acting Director of DOJ's Enforcement and Affirmative Litigation Branch. Instead of information based on her personal knowledge pertaining to a proper investigation of the Hospital for FDCA violations, Hsiao's Declaration consumes 15 pages of her assertions of what the law is—including assertions of the "overriding purpose of the FDCA," the proper scope of § 3486 affidavits, recitation of how the FDCA is applied, legal definitions of statutory terms, and citation to statutes and case law in support of her description of drug mislabeling and misbranding, and associated harms.

*Id.* (footnotes omitted). And as that court determined, "[n]othing in the Government's papers provides even a bare foundation on which to issue the Subpoena requiring adolescent patient medical records." *Id.* at *8. The Order makes a similar finding; but unlike in that case, the Hsiao declaration submitted here was only two pages, with even less of a showing than in the Maryland case. Dkt. # 25 at 10; *see* Dkt. # 18-1. In short, the Court neither explicitly nor implicitly applied a probable cause standard when it determined that the DOJ had not made a prima facie showing.[10]

---

[10] For this reason, the Court need not consider the DOJ's position that the Court is required to provide it another opportunity to meet the probable cause standard, nor will it consider the newly presented evidence and argument that the DOJ brings forward for that purpose. Dkt. # 29 at 9-11*; See Kona*, 229 F.3d 877, 890 ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"); *see also infra*, 4 n.3.

b.    Seattle Children's burden

But still, even if improper, the above finding would not be a reason to amend the Order because the analysis therein continues: "Even if the DOJ's threadbare evidence establishes its prima facie case, Seattle Children's has carried its burden to show that the subpoena was issued for an improper purpose." Dkt. # 25 at 16-17 (describing this as a "'heavy burden'"); *see also id.* at 6, 21, 22 ("Because Seattle Children's has carried its burden…"). So again, there was no burden shift, which the DOJ seems to acknowledge. *See* Dkt. # 29 at 6 ("the Court correctly stated that SCH bears a 'heavy' burden"). The DOJ also acknowledges that Seattle Children's did put forth a showing, but it dismisses this showing as "politically charged," and then asks the Court to "logically identify" how Seattle Children's has met its burden. Dkt. # 29 at 6.

The Order does this, but if it needs to be more directly stated, the Court does so here. To satisfy its burden Seattle Children's presented over 200 pages of evidence, including:

- Executive Orders (EO) and Executive statements unrelated to the subpoenas that indicate the Government sought to end gender affirming care outside the scope of any federal health care investigation. Dkt. # 2-1 at 34-37, 39-41; *see also id.* at 63-67.

- EO 14187 and the Attorney General's memorandum, both of which say that the purpose of any Government action is, as they see it, "preventing the mutilation of American children" and claiming, "the Department of Justice will bring these practices to an end." Dkt. # 2-1 at 30-32, 43-48.

- The President's public statements regarding EO 14187, all of which state that the Government was to use the EO to end gender affirming care. Dkt. # 2-1 at 59, 67 (President Trump's Truth Social post: "Today, it was my great honor to sign an Executive Order banning the chemical castration and medical mutilation of

ORDER - 12

innocent children in the United States of America. . . . My Order directs Agencies to use every available means to cut off Federal financial participation in institutions which seek to provide these barbaric [gender affirming care] medical procedures").

- The White House's public statements (already partially discussed above) explicitly stating the "intended effect" of the subpoenas was ending gender affirming care; stating that intended effect was being achieved; listing all the hospitals who had stopped gender affirming care and other "transgender-related services" by way of example of the achievement; and not mentioning a federal health care offense or any ongoing or future investigation.  Dkt. # 2-1 at 55-56.

- Sworn declarations from Seattle Children's attorneys who, during pre-litigation meetings, were informed by DOJ attorneys that the subpoenas "w[ere] not prompted by any specific information or allegations concerning the Hospital" and "the DOJ attorneys stated they are unaware of any allegations that the Hospital had made a false or misleading statement."  Dkt. # 2 at 2-3.

The Order determines that the foregoing—in addition to the DOJ's lack of a showing that there was a proper purpose—suffices to establish the DOJ did not issue the subpoenas to investigate a federal health care offense.[11]  Dkt. # 25 at 16-24; *see In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 239 ("The Administration has been explicit about its disapproval of the transgender community and its aim to end [gender affirming care].  The subpoena reflects those goals, comprising overbroad requests for documents and information seemingly unrelated to investigating fraud or unlawful off-label promotion."); *QueerDoc*, 807 F.

---

[11] The DOJ does accurately state that the Court applied a preponderance standard, but it has not explained how this was manifest error.  *See* Dkt. # 29 at 7; Dkt. 25 at 18.

ORDER - 13

Supp. 3d at 1303 ("This is not speculation about hidden motives—it is the Administration's explicit agenda.").

The DOJ highlights that they cannot find a case in which a similar showing met a subpoena recipient's heavy burden. Dkt. # 29 at 6. Yet this may reflect the unprecedented nature of the Government's actions. *See In re 2025 UPMC Subpoena*, 2026 WL 570419, at *2 ("The DOJ's actions in this area are unprecedented, to say the least."). At any rate, Seattle Children's has now identified several virtually identical cases with similar findings. *See In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229; *QueerDoc*, 807 F. Supp. 3d 1295; *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555; *In re 2025 UPMC Subpoena*, 2025 WL 3724705; *In re Children's Nat'l Hosp.*, 2026 WL 160792; R&R, *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398. One of these was decided a month before the instant motion was submitted and the DOJ is a party to it, *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229; it is hard to believe that the DOJ could not find this case.

As illustrated above, and contrary to the DOJ's assertion in the instant motion, the Court did not apply a balancing test. Dkt. # 29 at 6-7. After pages of discussion examining the DOJ's prima facie case and considering Seattle Children's showing, the Court acknowledged that courts have applied various standards to administrative subpoenas and noted the Fourth Amendment's important role in framing the decision regardless of the standard applied, but the Order's findings are not predicated on a balancing test. Dkt. # 25 at 23-24 (stating the Court's conclusion before discussing the Fourth Amendment principles that "underscores" the conclusion); *see also id.* at 5-7 (discussing the standard of review and stating the Court was applying the Ninth Circuit's three-factor test to consider a motion to quash administrative subpoenas).

Finally, the DOJ's assertion that the Court misapplied the holdings in higher court authority lacks merit. The DOJ lists *Powell*, *Goldman*, *In re Sealed Case*, and *Morton Salt Co.*

ORDER - 14

and argues that they "establish[] that the government is perfectly empowered to send subpoenas within its statutory authority in order to determine whether a federal health care offense may have been committed." Dkt. # 29 at 9. That may well be, but it reveals the core of what the DOJ fails to address—the Order makes clear that Seattle Children's showed that the DOJ was not, in fact, acting within its statutory authority to investigate a federal health care offense.

The DOJ repeatedly takes quotes out of context and cherry-picks burdens discussed at different sections of the Order to apply sweeping assertions. To avoid all confusion, the Order finds that "Seattle Children's has carried its burden of showing that the DOJ did not issue its subpoena to investigate a federal healthcare offense." Dkt. # 25 at 22. Of course, if the DOJ had presented any evidence or argument that contradicted that showing, the Court would have considered it; but that does not mean the Court shifted the burden onto the DOJ. *See QueerDoc*, 807 F. Supp. 3d at 1302 ("While the government need not justify its decision to open an investigation, once a recipient makes an adequate showing of bad faith or improper purpose, courts may examine whether the agency is 'pursuing the authorized purposes in good faith.'") (cleaned up) (quoting *Crystal v. United States*, 172 F.3d 1141, 1144-45 (9th Cir. 1999)). The Order does not shift to, or heighten the burden on, the DOJ.

3.      Pretext finding

Finally, the DOJ says that "the court manifestly erred when it incorrectly assumed that the subpoena is 'likely pretextual.'" Dkt. # 25 at 11. The DOJ advances this argument without grappling with Seattle Children's showing or the Order's actual findings. The DOJ seems to imply that the Order rejects the DOJ's stated reason for the subpoenas "simply because the [DOJ] might also have had other reasons" or because the Court "set aside" the DOJ's "policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities." Dkt. # 29 at 12. That is not the case.

ORDER - 15

The Order's findings are based on whether the DOJ issued the subpoena to investigate a federal health care offense.  The Order does not make any findings regarding the Attorney General or the Administration's policy goals.  Of course, the Administration may have general policy goals that differ from or support the DOJ's ongoing investigations.  But the DOJ's administrative subpoena power is not a loophole for achieving policy goals not authorized by Congress.  Congress sets the bounds of the DOJ's administrative subpoena power—not the Administration or its policy goals.  *See Oklahoma Press Pub.*, 327 U.S. at 209 (holding the courts are to determine whether "the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry"); *see id.* (considering a Fourth Amendment challenge, "[i]t is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command"); *see, e.g.*, *Peters v. United States*, 853 F.2d at 699 ("Because Congress has not specifically authorized the [agency] to issue blanket John Doe subpoenas nor provided procedural safeguards for their issuance, we will not infer such authority in the otherwise broad grant of authority" in the relevant statute).

The legal premise the DOJ relies on is based on the power Congress delegated to it in 18 U.S.C. § 3486(a)(1)(A)(i)(I) to investigate "a federal health care offense."  Dkt. # 25 at 5; *see also* Dkt. # 2-1 at 2-28; Dkt. # 18 at 5 ("the Government is attempting to obtain evidence using a Congressionally authorized subpoena power").  The DOJ seems to concede that providing or receiving gender affirming care is not a federal health care offense.  *See* Dkt. # 18 at 5-6.  And yet, as Seattle Children's has shown, the Government has repeatedly stated that the goal of EO 14187 and the subpoenas that stemmed from that EO is to end gender affirming care, and the DOJ has presented only broad, entirely conclusory statements to indicate otherwise.  *Compare* Dkt. # 2-1 at 30-32, 43-48, 55-56, 59, 67, 167-169 *and* Dkt. # 2 at 2-3 *with* Dkt. # 18-1; *see* *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) ("An administrative subpoena thus

ORDER - 16

may not be so broad so as to be in the nature of a 'fishing expedition.'"); *QueerDoc*, 807 F. Supp. 3d at 1304 (finding a fishing expedition "is precisely what DOJ tries to do here, as it seeks to rifle through thousands of patient records hoping to find something—anything—to justify its predetermined goal of ending gender-affirming care").

The DOJ should not conflate illegal practices with what the Administration has determined to be unfavorable practices.  The Court did not "reject," "discredit," or "ignore" the DOJ's evidence or argument; but rather it, and others, made a pretext finding based on the record presented.  *See In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 ("Considering the patent disassociation of the scope of the Subpoena from purported investigation of Hospital FDCA violations—against the backdrop of Executive Order 14187, the April 2025 DOJ memorandum, and the June 2025 DOJ memorandum—the court finds the Subpoena is a pretext to fulfill the Executive's well-publicized policy objective to terminate and block gender affirming healthcare."); *QueerDoc.*, 807 F. Supp. 3d at 1303-04 ("This is not speculation about hidden motives—it is the Administration's explicit agenda"); *In re 2025 UPMC Subpoena*, 2025 WL 3724705, at *2 ("this Court joins the others in finding that the government's demand for deeply private and personal patient information carries more than a whiff of ill-intent.").

## IV
### CONCLUSION

For these reasons, the Court DENIES the DOJ's motion to alter or amend the judgment. Dkt. # 29.

//

//

ORDER - 17

Dated this 23rd day of April, 2026.

John H. Chun
United States District Judge

ORDER - 18